STONE FORT NATIONAL
BANK, Appellant,

v.

ELLIOTT ELECTRIC SUPPLY
COMPANY, INC., Appellee.

No. 958.

Court of Civil Appeals of Texas,
Tyler.

Feb. 17, 1977.

Rehearing Denied March 24, 1977.

William D. Guidry, Benchoff & Guidry, Nacogdoches, for appellant.

Thad Floyd, Stripling & Sutton, Nacogdoches, for appellee.

McKAY, Justice.

This case involves a question of priority between a materialman's lien and a security interest under the Texas Business and Commerce Code. The case originally arose as an interpleader suit when the plaintiff, Brentco, Inc. (Brentco), filed its original petition complaining of Jim Porter, individually and doing business as Jim Porter Electric Company (Porter); Elliott Electric Supply Company, Inc. (Elliott), appellee herein; The Stone Fort National Bank (the Bank), appellant herein; and Nacogdoches Abstract and Title Company, Inc. (the Title Co.). In that petition Brentco admitted that it owed $4,078.00 on a subcontract to Porter and that such sum was held by the Title Co. Brentco alleged that it had no interest in the said amount, save that it be paid to the person legally entitled thereto. The Title Co. tendered that amount into the registry of the court to be paid to whomsoever it was due. In its original answer Elliott alleged that by reason of its mechanic's and materialman's lien, it was entitled to the full amount tendered into court and that its rights in and to said funds were superior to those of all other parties. The Bank filed a general denial. Later the Bank also filed a cross-action against Jim Porter and Elliott Electric Supply Company, Inc., whereby the Bank sought to recover on a promissory note executed by Porter to the Bank alleging a superior claim to the funds which had been interpleaded into the registry of the court.

On June 13, 1975, an interlocutory judgment was entered in the cause whereby the sum of $4,078.00 was paid into the registry of the court and Brentco was dismissed from the case. In that judgment the trial court found that Porter had defaulted and was not entitled to any judgment, and thus the cause was continued on the docket of the trial court as between Elliott Electric and the Bank. The case was tried before the court without a jury. After hearing and examining the evidence and arguments of counsel, the court rendered judgment that Elliott be awarded the sum of $4,078.00, which sum had been interpleaded into the registry of the court. It further ordered that the Bank recover judgment of $4,059.75 plus $1,500.00 attorney's fees against Porter and that the Bank's security interest be foreclosed as against all of the right, title and interest of Porter, subject to the superior rights of Elliott Electric in and to the $4,078.00 interpleaded into the trial court. This latter portion of the judgment is not appealed from. Request for findings of fact and conclusions of law was not timely requested and none were filed by the court. From this judgment the Bank has made a limited appeal concerning the $4,078.00 awarded to Elliott.

The record reveals that Brentco, the original contractor, contracted to build and

built an apartment complex called Brentwood Manor Apartments located in the City of Nacogdoches. The apartments were built during 1974 for Bill Wilder of Henderson, Texas. During the course of the construction Brentco subcontracted all the electrical work on the job to Porter. One of Porter's suppliers was Elliott who supplied electrical materials to Porter from February, 1974, to late 1974 or January, 1975.

In the early part of August, 1974, during the construction, Porter became unable to pay off his accounts. On August 15, 1974, Porter, upon Elliott's suggestion, secured a loan from the Bank in the amount of $30,000.00. He executed a promissory note in favor of the Bank for the loan amount and also a security agreement, covering certain items of personal property as security, including all contract rights and accounts receivable. After receiving the money from the loan Porter used the funds to pay on his account balance to Elliott who gave him credit for the $30,000.00; however, this did not completely satisfy the debt. Elliott stopped delivering materials to Porter around the end of 1974 or early 1975.

On November 20, 1974, Elliott caused to be filed with the office of the County Clerk of Nacogdoches County, Texas, a mechanic's and materialman's lien affidavit covering the Brentwood Apartment project. In the affidavit Elliott claimed it had furnished electrical materials to Jim Porter doing business as Jim Porter Electric Company for use in the Brentwood job and that it had not been paid for the said materials. In conjunction with the filing of this affidavit Elliott caused two exact copies of the affidavit to be mailed to Wilder, the owner. Prior to this time, on November 7, 1974, Elliott had sent statutory notices of its claim to Brentco and Wilder. Upon receipt of the notice Brentco withheld $4,078.00 or approximately 10% of the contract price from the final payment.

Upon trial of the cause Elliott introduced into evidence the monthly statements he had sent to Porter from June, 1974, to July, 1975. Each statement was dated the 25th of the month. The statements were prepared by a computer billing service (Nacogdoches Computer Service). Elliott would send a batch of invoices to the computer service who prepared the statements from the invoices. No testimony from a representative of the computer service as to the method of preparation of the statements was introduced; however, Mr. Elliott, the owner of Elliott Electric Supply Co., Inc., testified that after the statements were produced his personnel double-checked them against their balances. The statements indicated the invoice numbers of basically all the unpaid invoices. They did not reflect the invoice date or the date of delivery. According to Mr. Elliott the statements reflected invoices for materials delivered to Porter on other jobs that Porter was working on in addition to the Brentwood job. Although Mr. Elliott said the total for a particular job could be figured from the invoices, no attempt was made to separate the amounts in the statements. He also testified that some invoices in a given month were not received in time to send to the computer service. He testified that when credits or payments were received that they were applied against the oldest unpaid invoice.

Most of the dispute was over the balance due as of August 25, 1974. The balance per the statement was $48,392.22. The Bank introduced evidence of several credits made subsequent to the August 25th billing which if applied against the oldest invoices would lower the balance. These included: returned inventory, $10,736.76; equipment given to Elliott (airplane and two trucks), $11,900.00; and payments, $14,990.00, with a total of $37,626.76. This total deducted from the statement balance gave a balance of $10,765.46. The Bank then introduced into evidence a promissory note in the amount of $20,503.90 dated November 12, 1974, made by Carthage Plumbing and Heating, a partnership of Tommy Cox and Harold Wiggins. The note recited that it was "given in consideration of a Release of Claim by Elliott Electric Supply Co., Inc., said claim arising from the furnishing of electrical supplies and materials to Jim Porter . . . ." If this note was a credit

against the account then Porter would have a credit balance, assuming the above credits were valid. Mr. Elliott testified that he had sued on the note but it had not been reduced to judgment, nor had he given Porter credit on his books.

Elliott also introduced into evidence ninety-five of its invoices to Porter dated from March 15, 1974, to September 3, 1974, claiming them to be for materials delivered to the Brentco job. Only the last invoice dated September 3, in the amount of $14.65, was dated in the month of September. The last date on an invoice prior to that was August 29, 1974. Mr. Elliott had testified that the invoice is made up "at the exact time of the sale ordinarily, yet there could be an occasion where it would be written one day or delivered the next" apparently meaning that the invoice date was the day of delivery or the day before the delivery.

The Bank brings ten points of error. Points one, four and seven are no evidence points. Points two, three, five, six, eight and nine are insufficient evidence points. Point ten claims that as a matter of law the contract rights held by the Bank were superior to the claims of Elliott. Before passing upon the points presented we must consider the rules we are bound to follow. Where no findings of fact or conclusions of law are filed we must presume on appeal that every fact issue and such implied findings as were necessary to support the judgment were found by the trial court. *Morris v. Texas Elks Crippled Children's Hospital, Inc.,* 525 S.W.2d 874, 881 (Tex.Civ.App.—El Paso 1975, writ ref'd n. r. e.). In passing upon whether there is no evidence to support the judgment we must consider only the evidence favorable to the findings of the trial court, but in passing on the insufficiency of the evidence we consider all the evidence in the record. *Richardson v. Holmes,* 525 S.W.2d 293, 295 (Tex.Civ.App.—Beaumont 1975, writ ref'd n. r. e.). In the absence of findings and conclusions the judgment of the trial court must be affirmed if there is any legal theory which supports the judgment which has support in the evidence. *Washington v. Law,* 519 S.W.2d 953, 954

(Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n. r. e.).

In following the above rules in order to find that the trial court committed error it would be necessary that we determine that there is no evidence of probative value to support the judgment on the points raised. Therefore, we shall consider only points one, four, seven and ten.

Point one complains that there was no evidence that Porter was indebted to Elliott for materials furnished on the Brentco job. The thrust of appellant's argument on the first point is that the acceptance of the note of Carthage Plumbing and Heating by Elliott satisfied and discharged Porter's debt to Elliott. Article 3.802 of the Texas Business and Commerce Code Annotated provides:

"(a) Unless otherwise agreed where an instrument is taken for an underlying obligation

.  .  .  .  .

"(2) .  .  . the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. If the instrument is dishonored action may be maintained on either the instrument or the obligation; discharge of the underlying obligor on the instrument also discharges him on the obligation.
.  .  ."

Under "Comment" to this section it is stated ".  .  . but if the instrument is not paid on due presentment the right to sue on the obligation is 'revived'."

◼ Delivery of notes of a third person to the creditor does not constitute an absolute payment unless the parties so intend. *Morphy v. Garrett,* 48 Tex. 247, 250 (1877); *Houston v. Evans,* 17 S.W. 925 (Tex.1891); *Hill v. Citizens Nat'l Bank of Dallas,* 495 S.W.2d 615, 619 (Tex.Civ.App.—Tyler 1973, reversed on other grounds, Tex., 505 S.W.2d 246). Moreover, appellant did not affirmatively plead payment as required by Rules 94 and 95 of the Texas Rules of Civil Procedure, which have been held to apply to a party who is asserting the invalidity of a

materialman's lien claim on the grounds that the materials which are the basis of claim have been paid for. *First National Bank in Dallas v. Whirlpool Corp.,* 517 S.W.2d 262, 269 (Tex.1974).

■ In the present case we may assume that since the note has been sued on that the presentment and demand has been made by Elliott to Carthage Plumbing and Heating and that it has been dishonored; therefore, Porter's obligation would be "revived". We hold that since the note had not been collected, it did not extinguish Porter's debt to Elliott. The Bank's point one is overruled insofar as it complains that the debt of Porter was extinguished by the note of Carthage Plumbing and Heating.

■ The Bank's point four complains that the trial court erred in granting judgment to Elliott because there was no evidence that Elliott had a valid mechanic's and materialman's lien.

Article 5453–2b(1), V.A.C.S., provides:

"(1) Where the claim consists of a lien claim arising from a debt incurred by a subcontractor, the claimant shall give written notice of the unpaid balance of such claim to the original contractor not later than thirty-six (36) days after the tenth (10th) day of the month next following each month in which claimant's labor was done or performed in whole or in part or his material delivered in whole or in part; and claimant shall give a like notice to owner not later than ninety (90) days after the tenth (10th) day of the month next following each month in which the claimant's labor was done or performed in whole or in part or his material delivered in whole or in part."

The only notice in the present case which was sent by Elliott to Brentco was sent on November 7, 1974. The notice was sent within 36 days of the 10th of the month (October) following September; therefore, the notice only covered materials delivered after September 1, 1974, since the notice is required to be sent within 36 days of the 10th of the month following *each* month in which the materials are supplied. In no case would the notice cover materials delivered *prior* to September 1, 1974.

The only proof in the record that any materials were delivered in the month of September, 1974, pursuant to the notice given on November 7, 1974, was the invoice dated September 3, 1974, in the amount of $14.65. No testimony as to the dates of delivery of goods reflected by the monthly statements was offered; in fact, Elliott's main point of contention was in regard to the August 25, 1974, statement which admittedly was for invoices for materials delivered prior to that time and likewise prior to September 1, 1974. The latest date on any of the invoices other than the last one was August 29, 1974. According to Mr. Elliott's testimony as to when deliveries were made, the supplies on this invoice would have been delivered either that day or August 30, 1974. Linwood Flurry, a former employee of Porter, testified as to receiving several of the deliveries; however, no specific dates were given and most of his testimony was in reference to the invoices introduced into evidence. We hold that Elliott failed to introduce evidence, other than for $14.65, that Elliott delivered materials to Porter during the month of September, 1974, the period required by the notice.

Elliott contends that it "substantially complied" with the mechanic's and materialman's lien in that it (1) filed the affidavit claiming the lien with the County Clerk not later than 90 days after the indebtedness accrued, (2) sent two copies of the said affidavit to the owner by certified or registered mail, and (3) gave written notice to the owner within 90 days after the 10th of the month of each month in which the materials were delivered, all required by Article 5453, V.A.C.S.

We disagree with Elliott's contention of "substantial compliance". The 36 day notice provision in (2)(b)(1) of Article 5453, requiring notice to be given by the claimants of the subcontractor to the original contractor is for the benefit of the original contractor. It is the only notice that the original contractor personally receives. In

the present case the dispute is over money in the hands of the subcontractor—now in the registry of the court. We hold that Elliott was not in compliance with the notice requirements of the mechanic's and materialman's statute, with the exception of the $14.65 proven. However, in view of our disposition of this appeal, we hold it was not reversible error.

The Bank's point seven complains that the trial court erred in granting judgment to Elliott because there is no evidence that the funds held in the registry of such court were trust funds held for the benefit of Elliott. Article 5472e, V.A.C.S., provides in Section (1):

"All moneys or funds paid to a contractor or subcontractor or any officer, director or agent thereof, under a construction contract for the improvement of specific real property in this state . . . are hereby declared to be Trust Funds for the benefit of . . . materialmen who may . . . furnish . . . material for the construction or repair of any house, building or improvement whatever upon such real property; . . ."

█ Elliott contends that this statute was enacted to give protection to materialmen in addition to that provided by Article 5452, et seq., V.A.C.S., without any requirement for filing or notice or other action on the part of the materialman as a prerequisite to the rights provided under said statute. Mechanic's and materialmen's lien statutes in Texas are liberally construed for the purpose of protecting laborers and materialmen. *First National Bank in Dallas v. Whirlpool Corp.*, supra.

In *Panhandle Bank & Trust Co. v. Graybar Electric Co., Inc.*, 492 S.W.2d 76, 81, 82 (Tex.Civ.App.—Amarillo 1973, writ ref'd n. r. e.), the court followed two Federal cases and held that Art. 5472e is an additional security over and above the security provided by other statutes in favor of laborers and materialmen. The court there concluded:

"Article 5472e, the statute apparently enacted to give protection to materialmen in addition to that provided by Articles 5452 et seq. and 5160, has constituted all funds paid to a subcontractor under a construction contract such as this, as trust funds for the benefit of materialmen and laborers without any requirement for 'filing' or 'notice' or other action on the part of the materialmen as a prerequisite to the rights provided under the act. . . ."

The *Panhandle Bank* case has been cited and followed by *Triton Oil & Gas Corp. v. Moran Drilling Co.*, 509 S.W.2d 678, 687 (Tex.Civ.App.—Ft. Worth 1974, writ ref'd n. r. e.), and by *American Amicable Life Ins. Co. v. Jay's Air Conditioning and Heating, Inc.*, 535 S.W.2d 23, 26 (Tex.Civ.App.—Waco 1976, writ ref'd n. r. e.), in which the latter court, writing on Art. 5472e, V.A.C.S., said:

"The purpose of this statute is to protect materialmen and laborers, contractors and subcontractors; it does not create a trust for the benefit of interim or permanent lenders. . . ."

█ Under the record presented here it seems unquestioned that the funds paid into the registry of the court were trust funds, and under the statute and the authorities Elliott, the materialman, was entitled to the trust funds in preference to the Bank. While the requirements of notice provided for in Art. 5453(2)(b)(1) seem to become unnecessary, the reasoning of the cases seems to be that the Legislature has simply provided an additional protection for laborers and materialmen in enacting Art. 5472e. *General Electric Supply Co. v. Epco Constructors, Inc.*, 332 F.Supp. 112 (S.D.Tex. 1971); *Panhandle Bank and Trust Co. v. Graybar Electric Co., Inc.*, supra.

The Bank's points seven and ten are overruled.

The judgment of the trial court is affirmed.