**REPUBLICBANK DALLAS,
N.A., Appellant,**

v.

**INTERKAL, INC., Appellee.**

No. 05–83–00794–CV.

Court of Appeals of Texas,
Dallas.

Sept. 7, 1984.

Bruce W. Bowman, Jr., Vial, Hamilton, Koch, Tubb & Knox, Dallas, for appellant.

Nina Cortell, Haynes & Boone, Dallas, for appellee.

Before SPARLING, VANCE and WHITHAM, JJ.

WHITHAM, Justice.

Appellee, Interkal, Inc., is a beneficiary-materialman of the trust created in section one of TEX.REV.CIV.STAT.ANN. art. 5472e (Vernon Supp.1983).[1] Appellant, RepublicBank Dallas, N.A., is a bank within the meaning of section four of the Act. Both claim a superior right to money received by a contractor for the construction and remodeling of gymnasiums. The issue is whether section four of the Act renders inapplicable section one of the Act in circumstances in which a non-beneficiary bank is competing with a beneficiary-materialman for money declared to be trust funds in section one of the Act. The trial court rendered summary judgment in favor of Interkal. We conclude that Interkal was

entitled to the trust funds in preference to RepublicBank. Accordingly, we affirm.

We are called on in the present case to determine the scope of the first sentence of section four of the Act reading:

This Act shall have no application to any bank, savings and loan association or other lender or to any title company or other closing agent in connection with any transaction to which this Act is applicable.

In *Jensen v. First City National Bank*, 623 S.W.2d 924 (Tex.1981), the Supreme Court reserved the question of the scope of section four of the Act.[2] The Act reads, and significantly is organized, as follows:

Section 1. All moneys or funds paid to a contractor or subcontractor or any officer, director or agent thereof, under a construction contract for the improvement of specific real property in this state, and all funds borrowed by a contractor, subcontractor, owner, or any officer, director or agent thereof, for the purpose of improving such real property which are secured in whole or in part by a lien on the specific property to be improved are hereby declared to be Trust Funds for the benefit of the artisans, laborers, mechanics, contractors, subcontractors or materialmen who may labor or furnish labor or material for the construction or repair of any house, building or improvement whatever upon such real property; provided, however, that moneys paid to a contractor or subcontractor or borrowed by a contractor, subcontractor, or owner may be used to pay reasonable overhead of said contractor, subcontractor, or owner, directly related to such construction contract. The contractor, subcontractor, owner, or any officer, director or agent thereof, receiving such payments or funds, or having control or direction of same, is hereby made and

---

**1.** Act of May 27, 1967, ch. 323, 1967 Tex.Gen. Laws 770, *replaced by* Property Code Act, ch. 576, §§ 162.001–162.033, 1983 Tex.Gen.Laws, 3475, 3720–3722.

**2.** We note that enactment of the property code presented the legislature the opportunity to address the question and that it failed to do so by specific clarifying legislation. Instead, the property code breaks the Act into seven small pieces and scatters the pieces about.

constituted a Trustee of such funds so received or under his control or direction.

Sec. 2. Any Trustee, who shall, directly or indirectly, with intent to defraud, retain, use, disburse, misapply, or otherwise divert, any trust funds, or part thereof, as defined in Section 1 of this Act, without first fully paying and satisfying all obligations of the Trustee to all artisans, laborers, mechanics, contractors, subcontractors, or materialmen, incurred or to be incurred in connection with the construction and improvements, for which said funds were received, shall be deemed to have misapplied said Trust Funds. Misapplication of Trust Funds hereunder, under the value of $250, shall be punished by imprisonment in jail not exceeding two years and by fine not exceeding $500, or by such imprisonment without fine. Misapplication of Trust Funds hereunder, of the value of $250 or over shall be punished by confinement in the Department of Corrections for a period not exceeding ten years.

Sec. 3. Where Trust Funds are paid, misapplied, used, or otherwise diverted, in such a manner that such act constitutes a violation of this Act and some other offense punishable under the laws of the State of Texas, the party thus offending shall be amenable to prosecution at the state's election for misapplication of trust funds under this Act or for such other offense as may have been committed by him.

Sec. 4. This Act shall have no application to any bank, savings and loan association or other lender or to any title company or other closing agent in connection with any transaction to which this Act is applicable. Further, moneys or funds received under a construction contract are exempt from the provisions of this Act if the full contract amount is covered by a corporate surety payment bond.

The contractor executed a security agreement on the contractor's accounts receivable to secure the payment of promissory notes held by RepublicBank. Thereafter, the contractor ordered material from Interkal and used these materials in constructing and remodeling the gymnasiums. The property owners partly paid the contractor for this work with four checks. Temporary injunction intervened and the trial court ordered Interkal to deposit the checks into an escrow account at RepublicBank to be held pending the outcome of the lawsuit. Consequently, we treat the funds as being in the registry of the court and RepublicBank as the officer of the court holding the funds pending final disposition of the lawsuit. RepublicBank contends that section one of the Act is inapplicable in circumstances in which a non-beneficiary bank is competing with a beneficiary-materialman for money declared to be trust funds in section one of the Act. We disagree for three reasons.

■■■ First, the transaction between the contractor and RepublicBank is not a transaction to which the Act is applicable. Section four states that the Act "shall have no application to [RepublicBank] ... in connection with any transaction to which this Act is applicable." The Act is applicable to transactions involving construction contracts for the improvement of specific real property. The Act is not applicable to transactions involving bank loans made by the contractor to finance the operations of the contractor's business. We conclude, therefore, that the security agreement on the contractor's accounts receivable to secure the payment of promissory notes held by RepublicBank is not a transaction to which the Act is applicable. Thus, by its own terms, section four of the Act does not render section one of the Act inapplicable.

■■ Second, consider the way in which the Act is organized. Sections two and three of the Act provide criminal liability for misapplication of the trust funds. Thus, section four follows criminal sanctions. We conclude, therefore, that section four was intended to protect lenders and title companies from criminal charges arising out of receipt or disbursement of money that might be construed to be trust funds under the Act. Considering their function, inclusion of title companies and

closing agents supports this conclusion. Thus, we conclude further that this protection from criminal charges does not render section one of the Act inapplicable.

■ Third, we conclude that under the Act the money in question became impressed with a trust status when paid to the contractor. Consequently, the money could not be available to the contractor for payment of its loans from RepublicBank. *See Owens v. Drywall and Acoustical Supply Corp.*, 325 F.Supp. 397, 399–401 (S.D.Tex.1971), in which the court held that a tax lien could not attach to the trust fund created by the Act because the holder of the trust funds, the contractor, never acquired property rights in the trust funds to which the tax lien could attach. Therefore, the security interest of RepublicBank never attached to the money in question because the contractor never acquired property rights in the payments. Since RepublicBank's security interest could not be satisfied out of the trust fund, section four of the Act does not render section one of the Act inapplicable.[3]

■ The lien statutes in Texas are liberally construed for the purpose of protecting laborers and materialmen. *Lodal & Bain Engineers, Inc. v. Bayfield Public Utility District*, 583 S.W.2d 653, 656 (Tex. Civ.App.—Houston [1st Dist.] (1979), *rev'd on other grounds*, 602 S.W.2d 262 (Tex. 1980); *Marathon Metallic Building Co. v. Texas National Bank of Waco*, 534 S.W.2d 743, 747 (Tex.Civ.App.—Waco 1976, no writ). The Act was added to the lien laws by the legislature for the purpose of providing "an additional protection for laborers and materialmen...." *Stone Fort National Bank v. Elliott Electric Supply Co., Inc.*, 548 S.W.2d 441, 446 (Tex.Civ.App. —Tyler 1977, writ ref'd n.r.e.); *Owens*, 325 F.Supp. at 400.

■ Accordingly, we adopt the holding in *Stone Fort National Bank*, 548 S.W.2d at 446:

> Under the record presented here it seems unquestioned that the funds paid into the registry of the court were trust funds, and under the statute and the authorities [Interkal], was entitled to the trust funds in preference to [RepublicBank].

Consequently, we decline to follow the contrary holding in *Heldenfels Brothers, Inc. v. First National Bank of Hallettsville*, 657 S.W.2d 883, 885 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.), that "Section 4 of Article 5472e exempts banks from the other provisions of [the Act]." We hold, therefore, that section four of the Act does not operate to terminate a trust created by section one of the Act when a bank claims a non-beneficiary interest in money declared to be a trust fund in section one of the Act. It follows, and we so hold, that Interkal was entitled to the trust funds in preference to RepublicBank. Therefore, we conclude that the trial court did not err in rendering summary judgment in favor of Interkal.

■ By cross-point, Interkal contends that the trial court erred in refusing to grant it prejudgment interest with respect to the trust funds awarded in the summary judgment. The trust fund secures payment for labor or material furnished. The trust fund does not secure payment of prejudgment interest. We conclude, therefore, that the trial court correctly denied prejudgment interest out of the trust fund.

Affirmed.

SPARLING, Justice, dissenting.

I respectfully dissent. The majority interprets section 4 of article 5472e TEX. REV.CIV.STAT.ANN. (Vernon Supp. 1983)[1] as merely limiting a bank's liability

---

**3.** We note that section 162.004 of the property code precedes sections imposing criminal sanctions and omits the phrase "in connection with any transaction to which this Act is applicable." We note further that construction payments continue to be impressed with a trust status

when paid to a contractor under section 162.001 of the property code.

**1.** I note with interest that the majority has liberally construed article 5472e to benefit the unfortunate materialman, yet they have previously held in a concurring opinion that article 5472e

when it receives funds from a contractor with unpaid subcontractors. I would hold that section 4 also prevents the creation of a trust for materialmen when a bank is competing for those same funds.

Two lines of authority are in apparent conflict on this issue. One line of cases emphasizes the principle that statutes protecting materialmen should be afforded a broad and liberal construction and holds that materialmen may assert 5472e trust rights when competing with a bank for construction funds paid into the registry of the court. *Stone Fort National Bank v. Elliott Electric Supply*, 548 S.W.2d 441, 446 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.); *Panhandle Bank & Trust Co. v. Graybar Electric Co.*, 492 S.W.2d 76 (Tex. Civ.App.—Amarillo 1973, writ ref'd n.r.e.). However, these cases are distinguishable from our case because the banks involved, inexplicably, did not argue, as Republic-Bank has, that the first sentence of section 4 exempted them from the provisions of 5472e. The other line of authority, *Heldenfels Bros., Inc. v. First National Bank*, 657 S.W.2d 883, 885 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.), held that the express language of the statute exempts banks from the provisions of 5472e and must be followed. That case is distinguishable because, despite its broad holding, it only involved a bank threatened with civil liability rather than a bank asserting its priority in construction funds held in the registry of the court.

I would hold that the plain language of section 4 abates article 5472e under circumstances in which a bank is the competing creditor. The first sentence is straightforward and unambiguous: "This Act shall have no application to any bank ... in connection with any transaction to which this Act is applicable." Article 5472e's "application to a bank" appears obvious if we deny funds to a bank based only upon a trust created by the statute. Should we then ignore the unambiguous meaning of

section 4 in order to "liberally [construe the lien statutes] for the purpose of protecting laborers and materialmen"? I would hold not. When a statute is susceptible to only one meaning, a court should not engage in interpreting it. *Caminetti v. United States*, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1916); *Fox v. Burgess*, 157 Tex. 292, 302 S.W.2d 405 (1957); *Franklin v. Pietzsch*, 334 S.W.2d 214 (Tex.Civ.App.—Dallas 1960, writ ref'd n.r.e.). When a law is clear, it will be enforced as it reads, *Gilmore v. Waples*, 108 Tex. 167, 188 S.W. 1037 (1916), regardless of its effect. *Weaver v. Robison*, 114 Tex. 272, 268 S.W. 133 (1924). Properly enforcing a statute involves enforcing the restrictions and exemptions it includes as well. *Chambers v. Robison*, 107 Tex. 315, 318, 179 S.W. 123, 124 (1915). This is particularly true when the exemption is part of the very statute that created the right sought to be enforced. *Employer's Liability Assurance Corp. v. Young County Lumber Co.*, 122 Tex. 647, 656, 64 S.W.2d 339, 343 (1933). I recognize Interkal's argument that this broad exemption will reduce the protection afforded materialmen under 5472e, as many contractors have granted banks security interests in their accounts receivable. Nonetheless, the Texas Supreme Court has clearly defined our duty in *Simmons v. Arnim*, 110 Tex. 309, 220 S.W. 66 (1920):

> Courts must take statutes as they find them. More than that they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language and not elsewhere. They are not the lawmaking body. They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law. It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of

is unconstitutionally vague, and, thus, void. *McElroy v. State*, 667 S.W.2d 856, 868 (Tex.App.

—Dallas 1984, no writ.).

the law in their plain sense fairly sanction and will clearly sustain.

Adhering to this guidance, I would hold that article 5472e should not be applied against banks under any circumstances, and the summary judgment in Interkal's favor should be reversed.

Interkal and RepublicBank, in my judgment, stand in the position of ordinary creditors competing for funds in the registry of the court. Without consideration of article 5472e, the trial court should determine which party has priority in these funds under other applicable principles governing the rights of creditors. I would, therefore, reverse and remand.