George McCOY, Johnny McCoy, and R.J. Kelley, Appellants,

v.

NELSON UTILITIES SERVICES, INC., Appellee.

No. 12–86–0041–CV.

Court of Appeals of Texas, Tyler.

July 31, 1987.

Rehearing Denied Sept. 28, 1987.

Ben Corn, Stephens, Corn & Rosenstein, Tyler, for appellants.

Gordon Wellborn, Ron Adkison, Wellborn, Houston, Adkison, Mann, Sadler & Colley, Henderson, Ron Horsley, Tyler, for appellee.

ON MOTION FOR REHEARING

SUMMERS, Chief Justice.

Our opinion dated June 30, 1987, is withdrawn, and the following is substituted.

This case involves the question of damages arising out of the breach of a construction contract and the superior right to retainage. We reform the judgment and as reformed, affirm.

On December 22, 1982, appellant R.J. Kelley (Kelley), the owner of the Meadow Acres Subdivision Number 2 in Henderson, Texas (Meadow Acres), filed suit against McCoy Construction Company, Inc. (McCoy Construction) seeking damages for breach of contract. On January 21, 1983, McCoy Construction filed a counterclaim seeking to recover the funds retained by Kelley under the contract, to fix a lien against Meadow Acres, and to recover reasonable attorney's fees. On September 21, 1984, the appellee, Nelson Utilities Services, Inc. (Nelson Utilities), one of McCoy Construction's suppliers, filed a petition in intervention seeking to recover from Kelley and McCoy Construction the unpaid balance due on McCoy Construction's sworn account. On April 5, 1985, Nelson Utilities amended its petition in intervention to add appellants George McCoy and Johnny McCoy as defendants. On December 27, 1985, after a trial to the bench, the court rendered judgment that Kelley recover from McCoy Construction $37,437.93 as damages with six percent prejudgment interest; that Nelson Utilities recover from McCoy Construction, George McCoy, and Johnny McCoy, jointly and severally, $42,-409.93 as damages, six percent prejudgment interest, and $3,000.00 as attorney's fees; and that Nelson Utilities recover from Kelley $12,818.22 as damages with six percent prejudgment interest. George McCoy and Johnny McCoy appeal that portion of the judgment awarding Nelson Utilities damages from them, but McCoy Construction does not appeal. Kelley appeals only the portion of the judgment awarding Nelson Utilities damages from him.

On July 22, 1981, Kelley and McCoy Construction entered into an agreement whereby McCoy Construction would build the sewer system, the water system, and the streets of Meadow Acres for $261,865.32. The contract provided that McCoy Construction was to substantially complete the job within 120 working days following notice to commence work; that McCoy Construction was to provide, by the tenth of each month, written estimates to the supervising engineer, Ralph Stokes (Stokes), of the total value of work performed the preceding month; that after Stokes approved those estimates, Kelley was, by the fifteenth of the month, to pay McCoy Construction the amount of the approved statement less a ten percent retainage; that Stokes, within ten days following receipt of written notice of completion from McCoy Construction, was to inspect the work and, if substantially complete, issue to Kelley a certificate of completion; and that between thirty and thirty-five days following the issuance of the certificate of completion, Kelley was to pay McCoy Construction the balance due under the contract, including the contractual retainage. The contract was subsequently modified, reducing the contract price to $259,330.02. Construction began in August of 1981 and continued until March of 1982.

In March of 1982, a dispute over the partial payment due McCoy Construction for the work performed in February of 1982 arose. On March 1, 1982, McCoy submitted an estimate, less ten percent retainage, of $9,594.00, and this estimate was approved by Stokes on March 9, 1982. In a letter dated March 18, 1982, McCoy Construction notified Kelley that it had not received payment for the March 1 estimate and that McCoy Construction would consider the project abandoned if payment was not received within ten days. In three letters dated March 19, 1982, McCoy Construction authorized Kelley to pay directly Earl Boothe, one of McCoy Construction's subcontractors, out of the proceeds of the March 1 estimate. In a letter also dated March 19, 1982, Kelley notified McCoy Construction that McCoy Construction had apparently abandoned the Meadow Acres project, and that if work did not resume by March 24, 1982, Kelley would conclusively

presume that McCoy Construction had breached the contract. Kelley also issued a check, dated March 12, 1982, to McCoy Construction and Earl Boothe for $9,594.00, the amount due on the March 1 estimate, but this check was not presented for payment until March 30, 1982. Finally, in a letter dated March 29, 1982, McCoy Construction notified Kelley that the project had been abandoned as the result of Kelley's failure to timely pay the March 1 estimate and demanded payment within thirty days of $24,137.04, representing, according to McCoy Construction, the balance due under the contract.

As of March 29, 1982, Kelley had paid McCoy Construction $115,365.98 in partial payments and held $12,818.44 as contractual retainage. At that time, McCoy Construction was obligated to finish the project for $131,145.60. Moreover, McCoy Construction owed Nelson Utilities $42,409.93 for supplies used in the construction of the Meadow Acres project, ordered and delivered between August 24, 1981, and October 10, 1981. On April 16, 1982, Kelley contracted with Reynolds-Land, Inc. to complete the work specified in the original contract for $136,007.00 plus a reasonable force account with which to remedy prior construction deficiencies. Ultimately, Kelley paid Reynolds-Land, Inc. $165,922.26 to complete the Meadow Acres project.

Kelley brings three points of error, and McCoy Construction brings three points of error. In his first point, Kelley asserts that "the Trial Court erred in granting judgment in favor of Nelson Utilities Services, Inc., and against R.J. Kelley in that there was no evidence that Kelley was liable to Nelson under any conceivable theory of law." Specifically, Kelley complains that there was "no evidence that Nelson perfected any statutory lien for materialmen" and that there was "no evidence of any contractual relationship between Kelley and Nelson, therefore Nelson is not a subcontractor of Kelley." In his third point of error, Kelley complains that "the Trial Court erred in granting judgment for Nelson Utilities Service, Inc., and against R.J. Kelley in that any finding of liability of Kelley would be against the great weight and preponderance of the evidence. We shall discuss these points together.

In this case, the trial court did not file written findings of fact and conclusions of law.[1] Therefore, the judgment of the trial court implies all necessary fact findings in support of the judgment. *In the Interest of W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984); *Carter v. William Somerville and Sons, Inc.*, 584 S.W.2d 274, 276 (Tex. 1979); *Goodyear Tire & Rubber Co. v. Jefferson Construction Co.*, 565 S.W.2d 916, 918 (Tex.1978); *Buchanan v. Byrd*, 519 S.W.2d 841, 842 (Tex.1975); *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609, 613 (1951). In reviewing the record to determine if there is any evidence supporting the judgment and its implied findings, it is proper to consider only the evidence favorable to the issue and to disregard all evidence and inferences to the contrary. *Carter*, 584 S.W.2d at 276; *Goodyear Tire & Rubber*, 565 S.W.2d at 918; *Renfro Drug Co.*, 235 S.W.2d at 613, *Cartwright v. Canode*, 106 Tex. 502, 171 S.W. 696, 698 (1914). Finally, the judgment of the trial court must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *In the Interest of W.E.R.*, 669 S.W.2d at 717; *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978); *Lassiter v. Bliss*, 559 S.W.2d 353, 358 (Tex. 1977); *Seaman v. Seaman*, 425 S.W.2d 339, 341 (Tex.1968); *Bishop v. Bishop*, 359 S.W.2d 869, 871 (Tex.1962).

We agree with Kelley that Nelson Utilities did not perfect a statutory materialman's lien against the contractual retainage as provided by former article 5469.[2]

1. Kelley and Nelson Utilities each made one request that the trial judge file findings of fact and conclusions of law. The rules, however, require the trial judge to file findings of fact and conclusions of law only after the complainant has twice requested them. Tex.R.Civ.P. 296, 297; 4 R. McDonald, *Texas Civil Practice in District and County Courts* § 16.06 (rev. 1981).

2. Act of June 17, 1961, ch. 382, § 7, 1961 Tex. Gen.Laws 863, 869–70, *repealed by* Act of June 19, 1983, ch. 576, § 6, 1983 Tex.Gen.Laws 3475,

Nelson Utilities' claims, however, are not based on these provisions but rather on former article 5472e.[3] This statute was enacted to give protection to materialmen in addition to that provided by the materialman's lien statutes. *Republicbank Dallas, N.A. v. Interkal, Inc.,* 691 S.W.2d 605, 607 (Tex.1985); *Stone Fort National Bank v. Elliott Electric Supply Company,* 548 S.W.2d 441, 446 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.); *Panhandle Bank & Trust Company v. Graybar Electrical Company, Inc.,* 492 S.W.2d 76, 81 (Tex.Civ. App.—Amarillo 1973, writ ref'd n.r.e.). This act declares that all funds paid to a contractor or subcontractor under a construction contract for the improvement of specified real property, and all funds borrowed by a contractor, subcontractor, or owner for the purpose of improving such real property, which are secured in whole or in part by a lien on the specific property to be improved, are "Trust Funds for the benefit of the artisans, laborers, mechanics, contractors, subcontractors, or materialmen who may labor or furnish labor or materials for" the improvements, and appoints the contractor, subcontractor, or owner receiving such funds as Trustee. *Stone Fort National Bank,* 548 S.W.2d at 446; *American Amicable Life Insurance Company v. Jay's Air Conditioning and Heating, Inc.,* 535 S.W.2d 23, 26 (Tex.Civ. App.—Waco 1976, writ ref'd n.r.e.); *Panhandle Bank,* 492 S.W.2d at 82. There is no requirement that the materialman must comply with procedural requisites of former article 5469 to qualify as a beneficiary of these trust funds. *Stone Fort National Bank,* 548 S.W.2d at 446; *Panhandle Bank,* 492 S.W.2d at 81. Finally, former article 5472e is afforded a broad and liberal construction to protect materialmen. *Triton Oil and Gas Corporation v. E.W.*

*Moran Drilling Company,* 509 S.W.2d 678, 687 (Tex.Civ.App.—Fort Worth 1974, writ ref'd n.r.e.).

■ The evidence indicates that Nelson Utilities supplied $42,409.93 worth of materials used in the construction of Meadow Acres, that Nelson Utilities was never paid for these materials, and that Kelley retained $12,818.44 from the progress payment made to McCoy Construction. Under the terms of former article 5472e, the $12,-818.44 constituted a trust, with Kelley as Trustee, for the benefit of parties such as Nelson Utilities. Therefore, we conclude that the trial court properly rendered judgment that Nelson Utilities recover from Kelley the amount of the retainage.[4] Kelley's first and third points of error are overruled.

In his second point of error, Kelley argues that "the Trial Court erred in granting judgment in favor of Nelson Utilities Services, Inc., and against R.J. Kelley in that the contract in question, as a matter of law, gave the right to the funds in question to Kelley for recovery of his damages caused by McCoy's breach of the contract, up to the amount of said damages." This point is without merit. Kelley and McCoy Construction cannot eliminate Nelson Utilities' statutory protection under former article 5472e by contract. After reviewing former article 5472e, we conclude that Nelson Utilities has a superior statutory right[5] to the retained funds. Kelley's second point of error is overruled.

■ In their first two points of error, George McCoy and Johnny McCoy assert that "the trial court erred in granting judgment in favor of Nelson Utilities Services, Inc. and against George McCoy and Johnny McCoy in that there" was no evidence or, in

---

3729–30. This provision was recodified as Tex. Prop.Code Ann. § 53.057 (Vernon 1984).

**3.** Act of May 27, 1967, ch. 323, §§ 1–7, 1967 Tex.Gen.Laws 770 *repealed by* Act of June 19, 1983, ch. 576, § 6, 1983 Tex.Gen.Laws 3475, 3729–30. This provision was recodified as Tex. Prop.Code Ann. §§ 162.001–162.003, 162.031–163.033 (Vernon 1984).

**4.** The evidence establishes that $12,818.44 is the amount of the retainage instead of $12,818.22 as set forth in the judgment.

**5.** While former article 5472e provides that Kelley may use these funds to pay his reasonable overhead *directly related to such construction contract,* Kelley has failed to demonstrate that any of the expenses that he wishes to credit against the retainage meet this standard.

the alternative, insufficient evidence "that they were individually liable." We disagree. A pleading asserting that a defendant is not liable in the capacity in which he is sued must be verified by affidavit. Tex. R.Civ.P. 93(2). Neither Johnny McCoy nor George McCoy verified that portion of his pleading denying liability in his individual capacity. Therefore, the defense of limited individual liability as provided in Tex.Bus. Corp.Ann. art. 2.21(A) (Vernon Supp.1987) was not properly raised in the trial court and therefore not before us on appeal.[6] *See Butler v. Joseph's Wine Shop, Inc.,* 633 S.W.2d 926, 929 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). Even if George McCoy and Johnny McCoy can assert these points of error, they are without merit. Since the trial court failed to file findings of fact and conclusions of law, we cannot consider the factual sufficiency of the evidence. *Carter,* 584 S.W.2d at 276; *Goodyear Tire & Rubber,* 565 S.W.2d at 918; *Renfro Drug Co.,* 235 S.W.2d at 613; *Cartwright,* 171 S.W. at 698. Johnny McCoy testified that he was a co-owner of McCoy Construction. George McCoy testified that he and Johnny McCoy had control of funds within their company, that they both signed checks for McCoy Construction, and that they both directed to whom the check should be made payable. George McCoy further testified that McCoy Construction owed Nelson Utilities $42,409.93 for materials used in construction of Meadow Acres, that the estimates McCoy Construction submitted to Kelley included the cost of the materials supplied by Nelson Utilities, that he had another construction job while he was performing the Meadow Acres project, and that he used the money that Kelley paid McCoy Construction for the materials supplied by Nelson Utilities to pay other bills. Roger Nelson, president of Nelson Utilities, testified that George McCoy told him that McCoy Construction would pay Nelson Utilities as soon as McCoy Construction was paid for these materials by Kelley. After reviewing only the evidence favorable to the trial court's judgment and disregarding all evidence and inferences to the contrary, we conclude that there is some evidence that George McCoy and Johnny McCoy were individually liable.[7] Former article 5472e. George McCoy's and Johnny McCoy's first two points of error are overruled.

◼ In their final point of error, George McCoy and Johnny McCoy contend that "the trial court erred in awarding a judgment in favor of Nelson Utilities Services, Inc. for a sum in excess of the amount plead and proved." Kelley asserted the same point at argument. The trial court awarded Nelson Utilities $42,409.93 as damages from McCoy Construction, George McCoy, and Johnny McCoy, jointly and severally, and awarded Nelson Utilities $12,818.22 as damages from Kelley, a total of $12,818.22 more as damages than proven

---

**6.** This pleading defect has not been waived even though Nelson Utilities failed to specially except to McCoy Construction's answer. Tex.R.Civ.P. 90 provides only for waiver by "the party seeking reversal." Its purpose is to prevent reversal on technical grounds. When the defendant fails to deny liability in the capacity he is being sued under oath as prescribed by Tex.R.Civ.P. 93(2), he cannot escape the consequences of such failure by resorting to Tex.R.Civ.P. 90 and saying the plaintiff waived the right to assert the inadequacy of his denial. *Plains Insurance Company v. Evans,* 692 S.W.2d 952, 955 (Tex.App.—Fort Worth 1985, no writ); *Davis v. Young Californian Shoes, Inc.,* 612 S.W.2d 703, 704 (Tex.Civ. App.—Dallas 1981, no writ); *Goodman v. Art Reproductions Corporation,* 502 S.W.2d 592, 594 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.); *Ward v. Clark,* 435 S.W.2d 621, 624 (Tex.Civ. App.—Tyler 1968, no writ); *Butler, Williams &*

*Jones v. Goodrich,* 306 S.W.2d 798, 802–03 (Tex. Civ.App.—Houston 1957, writ ref'd n.r.e.); *Ramsey v. Cook,* 231 S.W.2d 734 (Tex.Civ.App.—Fort Worth 1950, no writ); *Watson v. Texas State Bank of Jacksonville,* 222 S.W.2d 341, 343–44 (Tex.Civ.App.—Texarkana 1949, no writ); *Lincoln v. King,* 193 S.W.2d 437, 439–44 (Tex.Civ. App.—Amarillo 1946, no writ).

**7.** George McCoy and Johnny McCoy contend that Nelson Utilities must prove that they acted with an intent to defraud. After a review of former article 5472e, we cannot conclude that Nelson Utilities must prove that George McCoy and Johnny McCoy acted with an intent to defraud to establish George McCoy's and Johnny McCoy's individual liability. *See Nuclear Corporation of America v. Hale,* 355 F.Supp. 193, 197 (N.D.Tex.1973), *aff'd per curiam,* 479 F.2d 1045 (5th Cir.1973).

by Nelson Utilities.[8] George McCoy's and Johnny McCoy's third point of error is sustained.

The judgment of the trial court is reformed to award Nelson Utilities $12,818.44 as damages from Kelley, McCoy Construction, George McCoy, and Johnny McCoy, jointly and severally, and to award Nelson Utilities $29,591.49 as damages from McCoy Construction, George McCoy, and Johnny McCoy, jointly and severally; as reformed, the judgment is affirmed.

COLLEY, J., not participating.

---

**8.** Neither Kelley, McCoy Construction, George McCoy, nor Johnny McCoy pleaded for either a set-off or contribution.