**C & G, INC. d/b/a Fox Rental, Appellant,**

v.

**C.N. JONES and Leonard Duncan, Appellees.**

**No. 05–04–00683–CV.**

Court of Appeals of Texas, Dallas.

June 15, 2005.

Michael Scott Macquaid, Harrison Steck Hoover & Drake, P.C., Fort Worth, for Appellant.

Robert Huckabee, Rockwall, for Appellee.

Before Justices WRIGHT, MOSELEY, and LANG.

### OPINION

Opinion by Justice LANG.

C & G, Inc. d/b/a Fox Rental appeals the trial court's "take nothing" judgment in favor of C.N. Jones and Leonard Duncan. Fox Rental sued Jones and Duncan for misapplication of construction trust funds pursuant to section 162.031(a) of the property code. *See* TEX. PROP.CODE ANN. § 162.031(a) (Vernon 1995). In a single issue, Fox Rental contends the trial court erred in failing to find Jones and Duncan personally liable for the trust funds. Because we conclude that the trial court improperly applied the law to the stipulated facts, we resolve this issue in Fox Rental's favor. We reverse the trial court's final judgment on Fox Rental's claims against Jones and Duncan and render judgment that Jones and Duncan are jointly and severally liable to Fox Rental for $27,556.71. In all other respects, the trial court's final judgment is affirmed.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The parties' dispute was presented to the trial court on an "Agreed Statement of Facts." According to the agreed facts, between January 30, 1999 and April 13, 2000, Fox Rental contracted with CCG to supply construction equipment for projects on which CCG was a contractor. CCG was wholly owned by American Eco Corporation, whose principal offices were in Houston. Jones and Duncan were principal officers of CCG and had offices in Dallas. Fox Rental delivered its invoices to CCG at its principal offices in Dallas. CCG received payments from the construction projects' owners at its lock box in Houston and persons other than Jones and

Duncan deposited them into CCG's checking account. Pursuant to chapter 162, these payments were trust funds, and Fox Rental was a beneficiary of these trust funds. CCG retained, used, or disbursed these payments without paying $27,556.71 which was owed to Fox Rental. At the time of trial, CCG was in bankruptcy.

Jones and Duncan had signatory authority on CCG's checking account. Neither of them personally received any trust funds, nor did they "independently" determine to whom the trust funds should be paid. Jones and Duncan disbursed such funds "in accordance with the instructions received from the officers of American Eco" in Houston. Jones and Duncan objected to the capture, use, and direction of such funds by American Eco and its officers. In April 2000, Jones and Duncan were asked by American Eco officers to leave their employment with CCG, "in large part" because of their objections to the manner in which funds were being handled by American Eco and its officers.

The trial court found in favor of Jones and Duncan and entered a take nothing judgment against Fox Rental. This appeal timely followed.

## II. STANDARD OF REVIEW

▇▇ Rule of civil procedure 263 provides for presentation of a case to the trial court on stipulated facts. *See* Tex.R. Civ. P. 263. As explained by the Fort Worth Court of Appeals in *State Farm Lloyds v. Kessler*, 932 S.W.2d 732 (Tex.App.-Fort Worth 1996, writ denied), we review the trial court's judgment de novo:

> An agreed statement of facts under rule 263 is similar to a special verdict; it is the parties' request for judgment under the applicable law. The only issue on appeal is whether the trial court properly applied the law to the agreed facts. The appellate court is limited to those

facts unless other facts are necessarily implied from the express facts in the statement. In an appeal of an "agreed" case, there are no presumed findings in favor of the judgment, and the pleadings are immaterial.

> Because the issue on appeal is a pure question of law, the appellate court performs a de novo review. A de novo review is less deferential than ordinary reviews because a trial court has no discretion in deciding what the law is or in properly applying it.

*Id.* at 735 (citations and footnotes omitted); *see Walker Eng'g, Inc. v. Bracebridge Corp.*, 102 S.W.3d 837, 839 (Tex.App.-Dallas 2003, pet. denied).

## III. APPLICABLE LAW

"A contractor, subcontractor, or owner or an officer, director, or agent of a contractor, subcontractor, or owner, who receives trust funds or who has control or direction of trust funds, is a trustee of the trust funds." Tex. Prop.Code Ann. § 162.002 (Vernon 1995). A trustee who, intentionally or knowingly or with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds, has misapplied the trust funds. *Id.* § 162.031(a).

▇▇ Thus, a party who misapplies these trust funds is subject to civil liability if (1) the party breaches the duty imposed by chapter 162, (2) with the requisite scienter, and (3) the claimants are within the class of people chapter 162 was designed to protect and have asserted the type of injury chapter 162 was intended to prohibit. *See Lively v. Carpet Servs., Inc.*, 904 S.W.2d 868, 873 (Tex.App.-Houston [1st Dist.] 1995, writ denied). Any officer or director who has control or direction

over the funds is also a trustee of the funds and is, therefore, personally liable. *Id.* However, there must be some evidence that the officer or director had control or direction over the trust funds, such as possessing and exercising the power to divert the trust funds by sending the funds wherever they choose and actually controlling the disposition of the funds. *See Nuclear Corp. of Am. v. Hale,* 355 F.Supp. 193, 197–98 (N.D.Tex.), *aff'd,* 479 F.2d 1045 (5th Cir.1973) (per curiam).

▆▆▆▆ Chapter 162 was enacted to give protection to materialmen in addition to that provided by the materialman's liens statutes. *McCoy v. Nelson Utils. Servs., Inc.,* 736 S.W.2d 160, 164 (Tex.App.-Tyler 1987, writ ref'd n.r.e.). Because chapter 162 is a remedial statute, courts must give it a broad construction to effectuate its protective purposes. *Vulcan Materials Co. v. Jack Raus, Inc. (In re HLW Enters. of Texas, Inc.),* 157 B.R. 592, 597 (Bankr. W.D.Tex.1993). "[T]he purpose of the statute is best served when the statute is read in accordance with its common sense meaning." *Id.*

## IV. DISCUSSION

The issue before the trial court was whether Jones, Duncan, or both, were liable for misapplying any portion of the trust funds under section 162.031(a). Fox Rental argues that the following stipulated facts conclusively establish that Jones and Duncan were trustees pursuant to section 162.002:(1) Jones was an officer of CCG, specifically, the president, and a director of CCG; (2) Duncan was an officer, specifically, the vice-president and chief financial officer, and a director of CCG; (3) they had control over the trust funds because they had signatory authority on the checking account into which the trust funds were deposited; and (4) they had the ability to direct the trust funds because they

disbursed the funds. Additionally, Fox Rental argues that, pursuant to section 162.031(a), it is conclusively established that both Jones and Duncan misapplied the trust funds based on these stipulated facts: (1) CCG misapplied trust funds of which Fox Rental was the beneficiary; and (2) Jones and Duncan disbursed the trust funds.

Nevertheless, Jones and Duncan argue that the following facts stipulated conclusively establish that they were not trustees:

(1) CCG was wholly owned by American Eco Corporation.

(2) Neither Jones nor Duncan personally received any of the trust funds, nor did they *independently* determine to whom the trust funds should be paid. Jones and Duncan disbursed such funds *in accordance with the instructions received from the officers of American Eco* in Houston, Texas.

(3) Jones and Duncan objected to the capture, use, and direction of such funds by American Eco and its officers. In April 2000, Jones and Duncan *were asked by American Eco officers to leave their employment with CCG, in large part* because of their objections to the manner in which funds were being handled by American Eco and its officers.

(Emphasis added.)

In their brief, Jones and Duncan state, "[I]t was neither Jones nor Duncan that received the funds, decided how to disburse them, or controlled or directed their use." According to Jones and Duncan, chapter 162 and the case authorities "clearly seek to hold accountable those who actually perform the acts which it prohibits. Jones and Duncan were not those persons." Further, "The receipt of all funds and the decisions regarding disbursement of those funds were controlled

by American Eco and its officers, the parent company of CCG."

The case law is sparse respecting the meaning of "control or direction of trust funds" in section 162.002. Fox Rental relies on *Liveley* and *McCoy*. However, those cases are distinguishable. In *Lively*, the person against which personal liability was claimed under chapter 162 was the sole shareholder, officer, and director of the general contractor which did not pay the subcontractor. *Lively*, 904 S.W.2d at 870. In *McCoy*, there was evidence that the two persons pursued for personal liability both had control and direction of the trust funds. Specifically, the two individuals were co-owners of the general contractor, and both had control of funds within the company, signed checks for the company, and directed to whom the check should be made payable. *McCoy*, 736 S.W.2d at 165. Thus, in both these cases, there was unassailed evidence that the individual defendants had complete control of the funds, yet they failed to pay the complaining materialman.

In *Hale*, the district court considered whether there was an exercise of "control" of trust funds by corporate officers under the predecessor statute of section 162.031(a). In its opinion, the district court made a distinction among three corporate officers, all of whom had the power to control or direct funds, but only two of whom actually "exercised" those powers. The president and general manager of the company and a director, who was also secretary-treasurer, took "active" parts in the daily management of the company. *Hale*, 355 F.Supp. at 195. Most of the company's checks were signed by these two individuals. *Id.* Another individual, who was the vice-president and a director, took a "passive" role in the company's operations, and, unlike the others, he made no managerial decisions. *Id.* Specifically,

this individual never "participated in any decision to favor certain creditors over others as to the manner in which the creditors would be paid from the available funds." *Id.* The court concluded that "though he may have had the power as a director and vice-president to control or direct the use of these funds, there is no evidence that this power was ever exercised when it came to disbursement of [trust] funds." *Id.* at 197–98. Thus, the key to determining "control or direction" was whether those who could exercise power did so, i.e., whether they actually diverted trust funds and failed to pay the materialman entitled to the funds. The district court concluded that those who exercised the power to direct the funds were liable, and the individual who did not exercise the power was not liable.

 Applying these authorities to the facts in this case, we conclude that the stipulated facts do not allow us to make the distinctions made by the district court in *Hale*. Even though the stipulated facts state that Jones and Duncan did not "independently" determine to whom the funds should be paid, the word "independently" does not exclude the participation of Jones and Duncan in the decision to divert funds. Further, the stipulation that Jones and Duncan made the payments "in accordance with the instructions" of the parent company officers does not exclude Jones or Duncan from the "decision" to divert the funds. Finally, being asked to leave CCG "in large part" because of objections made respecting the handling of trust funds does not address the control or direction of the funds. This fact may address intent to defraud in exercising the diversion of funds, but "intent" to defraud is not determinative of personal liability. *See id.* at 197 (applying predecessor statute and noting materialman "need not make a showing of fraud or intent to defraud to recov-

er" when materialman has "a civil remedy for breach of trust for any misapplication of funds" owing to it); *see also Tex. Natural Res. Conservation Comm'n v. Lakeshore Util. Co.*, 164 S.W.3d 368, 373 (Tex. 2005) (holding "knowingly" as used in the water code "requires proof of knowledge of the facts") (citation omitted). The facts show that Jones and Duncan participated in both the decision by CCG and American Eco to divert the funds and the actual diversion of the funds. On this record, we cannot conclude that Jones and Duncan had no control over the trust funds or that they exercised no such power in the disbursement of the trust funds.

Based on this record, we conclude that the trial court improperly applied the law to the facts. Jones and Duncan are "officers" of CCG who had "control or direction" of trust funds, pursuant to section 162.002, and "directly or indirectly" used, disbursed, or otherwise diverted the trust funds at issue, pursuant to section 162.031(a). Accordingly, they are personally liable, jointly and severally, to Fox Rental for the stipulated amount of $27,556.71. *See Hale*, 355 F.Supp. at 199 (individuals found personally liable and who were acting together were adjudged jointly and severally liable); *McCoy*, 736 S.W.2d at 165–66 (same). We resolve Fox Rental's single issue in its favor.

## V. CONCLUSION

We reverse the trial court's final judgment on Fox Rental's claims against Jones and Duncan and render judgment that Jones and Duncan are jointly and severally liable to Fox Rental for $27,556.71. Since the final judgment also disposed of other defendants not before us in this appeal and we do not address them, those parts of the final judgment relating to them are affirmed.[1] We note that Fox Rental raises no issue on appeal regarding any claim to pre- or postjudgment interest or attorney's fees, nor were there any stipulated facts or evidence introduced as to interest or attorney's fees.

---

1. Specifically, the final judgment provides that Fox Rental non-suited its claims against defendants Liz Watson and Michael C. Appling, and those claims were dismissed without prejudice. In addition, the final judgment provides that Fox Rental had previously non-suited or dismissed its claims against defendants Specialty Management Group, Inc. d/b/a CCG, f/k/a CCG Commercial Construction Group, Inc., National Union Fire Insurance Company of Pittsburgh, PA, Val Williams, and Michael E. McGinnis.