**NUCLEAR CORPORATION OF AMERICA, Plaintiff,**

**v.**

**Bill G. HALE et al., Defendants.**

**Civ. A. No. CA–7–688.**

United States District Court,
N. D. Texas,
Wichita Falls Division.

Feb. 6, 1973.

Terry Shipley, Noble, Okl., Ralph Pulley, Jr., Dallas, Tex., for plaintiff.

Keith Nelson, Wichita Falls, Tex., for defendants.

## MEMORANDUM OPINION

ROBERT M. HILL, District Judge.

Nuclear Corporation of America, a Delaware corporation with its principal place of business in the State of North Carolina, has brought this action against Bill G. Hale, Lloyd Ruby and Jack Conley who are Texas residents and who were sole stockholders, directors and officers of Mac Steel, Inc., a now defunct corporation. Nuclear seeks to hold these defendants individually liable for the payment of moneys owed to it by Mac Steel, Inc. Jurisdiction is based on 28 U.S.C. § 1332.

### The Facts

In 1966 Jack Conley and two other individuals incorporated Mac Steel under Texas law. Its principal place of business was in Wichita Falls, Texas, and it was primarily engaged in the business of steel fabrication. Conley was president and general manager of the company.

In June 1968 Billy G. Hale and Lloyd Ruby purchased the stock owned by the two other stockholders. Hale became a director and secretary-treasurer and Ruby became a director and vice-president. Conley continued in his capacity as president and general manager.

As general manager Conley solicited most of the company's business and was responsible for preparing bids the company submitted on construction projects. Conley directed the hiring and firing of employees and purchased routine supplies and equipment used by the corporation. He consulted with Hale and Ruby on all major financial investments in equipment. The company had one bank account which it used in carrying on its business operation, and as many as one hundred checks per month were written on this account. During the existence of the company most of the checks were jointly signed by Hale and Conley.

Hale and Ruby purchased their interest in Mac Steel as an investment. Every month they received copies of bank deposits and reports on the company's financial condition. Hale took a more active part in the daily management of the company. He visited the company's premises every week and frequently consulted with Conley about the day to day financial condition of the company.

In 1969 the company's financial condition became critical as a consequence of the general depressed condition of the construction industry and rising interest rates. At this point Hale and Ruby were in more frequent consultation with Conley. Towards the latter part of 1969 and early 1970 Hale became even more active in the company's operations. Hale suggested that Conley's wife be relieved as the company's bookkeeper and shortly thereafter she left the employ of the company. About February 28, 1970, Conley resigned as general manager and Hale then took over the managerial responsibilities for the company. At this time Conley and Hale discussed the availability of funds to pay creditors and which creditors should be paid from such funds. One of the creditors which were paid was Hale Supply Company, a company owned by Hale. Mac Steel went bankrupt in April 1970.

Defendant Ruby had a passive role in the operations of Mac Steel. His activities were generally limited to those of a director. On one occasion he loaned the company $20,000.00 and was repaid approximately $2,000.00 before the company went into bankruptcy. Unlike Hale and Conley he made no managerial decisions. While Ruby was consulted about the financial condition of the company, there is no evidence that he ever participated in any decision to favor certain creditors over others as to the manner in which the creditors would be paid from the available funds.

In 1969 Mac Steel was a successful bidder for subcontract work on a construction project in Oklahoma and at Sheppard Air Force Base, Texas. From August 18, 1969 to January 19, 1970. Nuclear supplied $8,428.00 worth of steel joists and related materials to Mac Steel which were used in the construction of a bowling alley at Sheppard Air

Force Base. On December 15, 1969, $8,181.00 worth of the same type of materials were supplied to Mac Steel which were used in the construction of a hospital located in Purcell, Oklahoma. After completing both of these subcontracts Mac Steel was paid by the general contractor for each job. These funds were deposited in the company's only bank account and were thereafter paid out in the regular course of business.

Nuclear was never paid for the materials it supplied nor did Mac Steel segregate any of the funds received from these jobs for the purpose of paying Nuclear. The gravamen of Nuclear's case is that under applicable Texas and Oklahoma laws to the extent of the amount owed Nuclear these funds were to be held by Mac Steel in trust for the use and benefit of Nuclear and that since the funds were misapplied and Nuclear was never paid then Hale, Ruby and Conley, as managing or controlling agents of Mac Steel, are individually liable to Nuclear.

### Choice of Law

Two causes of action on different statutory materialman's liens are involved in this case. One cause of action is based upon a lien arising from an agreement to furnish materials for a construction project in Texas. The second cause of action is based upon a lien arising from an agreement to furnish materials for a construction project in Oklahoma.

Nuclear contends that the law applicable to the transaction with Mac Steel in which it furnished materials which were used in the Texas project is Tex.Rev. Civ.Stat.Ann. art. 5472e § 1 (1967) which provides in pertinent part:

> All moneys or funds paid to a . . . subcontractor . . . under a construction contract for the improvement of specific real property in this state, . . . are hereby declared to be Trust Funds for the benefit of the . . . materialmen who may . . . furnish . . . material for the construction . . . of any . . . building or improvement whatever upon such real property; provided, however, that moneys paid to a . . . subcontractor . . . may be used to pay reasonable overhead of said . . . subcontractor, . . . directly related to such construction contract. The . . . subcontractor, . . . or any officer, director or agent thereof . . . having control or direction of same, is hereby made and constituted a Trustee of such funds . . . under his control or direction.

Nuclear contends that the law applicable to the transaction with Mac Steel in which it furnished materials which were used in the Oklahoma project is 42 Okla.Stat.Ann. §§ 152, 153 (1968) which provides in pertinent part:

> (1) The amount payable under any building or remodeling contract shall, upon receipt by any contractor or subcontractor, be held as trust funds for the payment of all lienable claims due and owing or to become due and owing by such contractors or subcontractors by reason of such building or remodeling contract. [§ 152]
>
> *  *  *  *  *  *
>
> (1) Such trust funds shall be applied to the payment of such valid lienable claims and no portion thereof shall be used for any other purpose until all lienable claims due and owing or to become due and owing shall have been paid.
>
> (2) If the party receiving any money under Section 152 shall be a corporation, such corporation and its managing officers shall be liable for the proper application of such trust funds. [§ 153]

The defendants argue that Tex.Rev. Civ.Stat.Ann. art. 5472e applies to both causes of action since the agreements under which the materials were supplied for these two projects were made and performed in Texas.

██ A materialman's lien is a creature of the law of the state where the real property, benefited by the materials, is situated and that law governs the mode of its operation. In re Willax, 93

F.2d 293, 295 (2d Cir. 1937). This rule applies although the contract for supplying materials was made and performed in another state by individuals or corporations who do not reside in the state where the real property is located. Lively v. Evans-Howard Fire Brick Co., 115 Okl. 259, 242 P. 773 (1926); Stearns-Roger Mfg. Co. v. Aztec Gold Min. & Mill. Co., 14 N.M. 300, 93 P. 706 (1908); Genest v. Las Vegas Masonic Bldg. Assn., 11 N.M. 251, 67 P. 743 (1902); United States Inv. Co. v. Phelps & Bigelow Windmill Co., 54 Kan. 144, 37 P. 982 (1894). Oklahoma law should thus apply to any agreement for the supply of materials which benefited real property in Oklahoma and likewise Texas law should apply to any such agreement which benefited real property in Texas.

### The Texas Project

Nuclear supplied materials used by Mac Steel in the construction of a bowling alley at Sheppard Air Force Base located in Wichita Falls, Texas. Nuclear invoiced Mac Steel for the materials, who invoiced the general contractor, who forwarded payment to Mac Steel. The moneys paid by the general contractor were used by Mac Steel to pay other chosen creditors. There was no evidence introduced that these funds were used to pay "reasonable overhead" of Mac Steel "directly related" to the Texas project, in which case no liability for misuse of trust funds would arise by reason of such payment.

■ Under Texas law these funds were to be held by Mac Steel in trust for Nuclear, the materialman on this project. Likewise, any officer or director of Mac Steel who had control or direction over such funds was also a trustee of such funds. Tex.Rev.Civ. Stat.Ann. art. 5472e § 1 (1967). Thus individual liability of these defendants depends on whether they *controlled* or *directed* any of these funds after receipt by Mac Steel.

■ The evidence clearly shows that Conley and Hale had control and direction over these funds whereas Ruby did not. Both Conley and Hale possessed and exercised the power to direct which creditors of Mac Steel would be paid out of the funds made available from the Sheppard Air Force Base job, Hill York Corp. v. American International Franchises, 448 F.2d 680 (5th Cir. 1971), and they were charged by statute with the duties and responsibilities of a trustee. Tex.Rev.Civ.Stat.Ann. art. 5472e § 1 (1967).

■ Hale and Conley breached their fiduciary trust relationship with Nuclear by diverting these funds for the payment of other creditors. As trustees under a trust created by statute, Hale and Conley are liable for funds spent in violation of such trust notwithstanding that the unauthorized expenditures were made in good faith. *See,* Stevenson v. Sherman, 231 S.W.2d 506 (Tex.Civ.App. —Dallas 1950—writ ref'd).

■ Nuclear need not make a showing of fraud or intent to defraud to recover against Hale or Conley. Section 1 of article 5472e clearly gives Nuclear a civil remedy for breach of trust for any misapplication of funds owing to Nuclear. Section 2 of article 5472e makes it a misdemeanor to misapply the trust funds with the intent to defraud. When a statute is both penal and remedial it should be considered as a penal statute when it is sought to enforce the penalty and as a remedial statute when it is sought to enforce the civil remedy. Taussig v. Wellington Fund, 187 F.Supp. 179 (Delaware 1960), aff'd, 313 F.2d 472, cert. den. 374 U.S. 806, 93 S.Ct. 1693, 10 L.Ed.2d 1031; Board of Ins. Com'rs v. Great Southern Life Ins. Co., 150 Tex. 258, 239 S.W.2d 803 (Tex.Sup. Ct.1950). Since there is no effort to invoke the penal section of 5472e in these proceedings, it was not incumbent on Nuclear to prove fraud or intent to defraud by Hale and Conley with respect to the payment of Nuclear's claim.

As for Ruby this court recognizes that though he may have had the power as a director and vice-president to control or direct the use of these funds, there is no evidence that this power was ever exercised when it came to disbursement of

the funds received by Mac Steel on the Texas project. Under these circumstances no liability is imposed on Ruby pursuant to article 5472e § 1.

### The Oklahoma Project

Nuclear also supplied steel joists and other related materials at the request of Mac Steel for the construction of a hospital located in Purcell, Oklahoma. Nuclear invoiced Mac Steel for these materials, who invoiced the general contractor, who forwarded funds to Mac Steel in payment of the invoices. The funds paid to Mac Steel were used by it to pay other chosen creditors unrelated to the Oklahoma project.

█ The provisions of 42 Okla.Stat. Ann. §§ 152, 153 (1968) are directly applicable to this situation. Section 152 provides that any amount received by a subcontractor for a construction project shall "be held as trust funds for the payment of all lienable claims." The statute further provides that no portion of the trust fund shall be used for any other purpose until all "lienable claims" have been paid. Section 153 provides that the subcontractor and its "managing officers" are liable for the proper application of these trust funds.

The defendants attempt to avoid personal liability under Oklahoma law for the indebtedness owed Nuclear for materials used on the Oklahoma project by arguing that they were not "managing officers" within the meaning of 42 Okla.Stat.Ann. § 153. While there are no reported cases construing this particular provision the court is of the opinion that no matter how narrowly or broadly Section 153 is construed, Hale and Conley were clearly managing officers of Mac Steel. The findings made by this court in its determination that Hale and Conley were liable under Texas law for the claims arising out of the Sheppard Air Force Base project also support this court's determination that Hale and Conley are liable under Section 153. The Maguerite W., 49 F.Supp. 929 (E. D.Wis.1943).

█ Nuclear concedes that Ruby did not participate in the day to day affairs of the corporation, such as signing checks and consulting with employees on a regular basis. Yet it is argued that because Ruby was a stockholder, officer and director, that status alone was sufficient to show that Ruby was a managing officer. This court feels that Section 153 requires more than a mere designation of title after a person's name to create personal liability in such person for the debts of the corporation. If this were the case then the Oklahoma legislature could have easily said so. The language "managing officers" does not include one who has not been shown to control or direct the affairs of the corporation.

### The Fraud Theory of Recovery

█ Nuclear also seeks to impose common law liability on the defendants for the payment of its claims because as officers and directors of Mac Steel, the defendants caused the corporation to enter into the two projects referred to herein knowing that Mac Steel was in financial trouble and experiencing difficulty meeting its daily obligations. While it is clear that the defendants were aware of the company's financial problems, there is no evidence to support the conclusion that the corporation entered into the agreements with Nuclear in bad faith or with any intent to defraud Nuclear. In fact the evidence clearly indicates that the defendants were exercising some degree of prudence and diligence in attempting to keep the corporation a going concern.

It is well settled that if officers of a corporation act in good faith and with prudence and diligence they are not personally liable to creditors for the corporation's insolvency absent fraud or some provision of positive law. Emmert v. Drake, 224 F.2d 299 (5th Cir. 1955); Conway v. Bonner, 100 F.2d 786 (5th Cir. 1939); Conrick v. Houston Civic Opera Ass'n, 99 S.W.2d 382 (Tex.Civ. App.—Amarillo 1936, no writ history). This court is of the opinion that under Texas law these defendants are not personally liable to Nuclear under its second theory of recovery.

*Conclusion*

Hale and Conley did have *control* and *direction* over the funds received from the general contractor for the materials supplied by Nuclear and used in the project at Sheppard Air Force Base. Under Tex.Rev.Civ.Stat.Ann. art. 5472e these funds were to be held in trust for the benefit of Nuclear and since Hale and Conley as trustees misapplied the trust funds they become personally liable to Nuclear for the amount of its claim related to the Texas project.

Hale and Conley were *managing officers* of Mac Steel as that terminology is used in 42 Okla.Stat.Ann. §§ 152, 153 and are therefore personally liable to Nuclear for the misapplication of funds received for the materials supplied by Nuclear on the Oklahoma project.

Because of the passive role of Ruby in the direction, control and management of Mac Steel, he is not personally liable to Nuclear.

For the foregoing reasons Hale and Conley are jointly and severally adjudged to be obligated to Nuclear in the amount of $16,609.00.