ACCU–TECH CORP., Plaintiff(s),

v.

Hiram JACKSON, et al., Defendant(s).

No. 03–71575.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 20, 2005.

I. William Cohen, James D. VandeWyngearde, Matthew J. Lund, Mindy M. Schwartz, Pepper Hamilton (Detroit), Detroit, MI, for Plaintiff.

Douglas C. Salzenstein, Robert M. Jackson, Honigman, Miller, (Detroit), Detroit, MI, George A. Sumnik, Joseph H. Heckendorn, Jaffe, Raitt, (Southfield), MI, for Defendants.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [68] AND DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION IN LIMINE [41]

EDMUNDS, District Judge.

There are two matters before the Court: Defendant's motion in limine and Defendant's motion for summary judgment. The issues Defendant presents in the motion in limine are not appropriately addressed at this time; that motion is therefore **DENIED**. The summary judgment motion requires the Court to interpret the scope of the Michigan Builders' Trust Fund Act, MICH. COMP. LAWS §§ 570.151 et seq. ("MBTFA"). Because the MBTFA can apply here and for the reasons stated below, the Court **DENIES** Defendant's motion.

### I. Facts

Plaintiff Accu–Tech Corporation ("Accu–Tech") is a Georgia corporation that supplies products related to voice, video, and data network infrastructures. Am. Compl. ¶¶ 1, 8. Around 1994, Clover Technologies, Inc. ("Clover"), a Michigan corporation, began purchasing these products from Accu–Tech for various projects.[1] Am. Compl. ¶¶ 9–10. The projects were

---

1. Clover is presently in bankruptcy proceedings and is not a party to this lawsuit.

primarily located in Michigan, but some were in other states. Am. Compl. at Ex.2 (Clover Unpaid Invoices Chart). Once a purchase order was received, Accu–Tech generally sent the materials to Clover's warehouse in Wixom, Michigan. Pl.'s Br. at 1–2, Ex. 1 (Clover's Purchase Orders). The purchase orders all contained a choice of law provision which dictated that disputes would be governed by Michigan law. Pl.'s Br. at Ex. 2 (Clover Purchase Order's Terms and Conditions).

In 2000, Clover entered into a factoring[2] agreement with Defendants Greenfield Commercial Credit ("Greenfield") and Clover Technologies Capital Funding ("Capital Funding"), both of which are Michigan limited liability companies. Am. Compl. ¶¶ 3, 5; Pl.'s Br. at Ex. 4 (Factoring and Security Agreement). In 2002, however, Clover defaulted on this contract.

Thereafter, Clover entered into a surrender and liquidation agreement with Greenfield.[3] Pl.'s Br. at Ex. 9 (Surrender and Liquidation Agreement). Greenfield then determined which, and to what extent, creditors of Clover were paid. Def. Jackson's Answer to Interrog. No. 3. After 2002, Greenfield collected more than $2,900,000 from Clover's debtors. Pl.'s Br. at Ex. 12 (Greenfield Collection Report).

Accu–Tech then filed suit against Greenfield, Capital Funding, and two individuals for alleged violations of the MBTFA.[4] Greenfield filed a motion for summary judgment, pursuant to FED.R.CIV.P. 56, arguing that the MBTFA was not applicable to any of the projects located outside Michigan.

## II. Motion in Limine

In its motion in limine, Greenfield argues that, pursuant to general trust law, a plaintiff bears the burden of showing the existence of the res and that he was a beneficiary. The MBTFA creates a trust for the benefit of laborers, subcontractors, materialmen. MICH. COMP. LAWS. § 570.151. Greenfield therefore concludes that the MBTFA must follow general trust law and put the burden on Plaintiff.

▉ Plaintiff, on the other hand, argues that Greenfield's motion is not a proper motion in limine because it does not ask the Court to exclude evidence. This conclusion is correct. The issue Greenfield ask the Court to decide may be proper, for example, in a motion for summary judgment or in determining jury instructions. It is not necessary at this time, however, and would therefore be akin to an advisory opinion. Defendant's motion is therefore denied without prejudice.

## III. Motion for Summary Judgment

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates

---

**2.** "Factoring" is the sale of a firm's accounts receivable to a third-party known as a factor. *See* BLOOMBERG FINANCIAL GLOSSARY *available at* http://www.bloomberg.com/analysis/glossary/bfglosa.htm.

**3.** There were other parties to the contract that are not relevant here. *See* Pl.'s Br. at Ex. 9 (Surrender and Liquidation Agreement).

**4.** Accu–Tech's complaint contains three other claims against Defendants. These claims are not relevant to the matter presently before the Court.

834

summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. 2505.

The court must believe the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255, 106 S.Ct. 2505. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *See id.*

The MBTFA imposes a trust upon specific funds paid to a contractor. *See* MICH. COMP. LAWS § 570.151. The trust ensures that the contractor will "first pay laborers, subcontractors and materialmen on the particular project for which the funds were deposited before he uses the fund for any other purpose." *Huizinga v. United States*, 68 F.3d 139, 144 (6th Cir.1995)(quotation and citation omitted); *see also* MICH. COMP. LAWS §§ 570.151, 570.152.

The MBTFA could apply to the materials Accu–Tech sent Clover through two avenues. First, the parties may have incorporated the requirements into their contract. Also, the MBTFA may apply by its own force.

**A. MBTFA as a Clause in the Contract**

As noted above, Clover's purchase orders contained a choice of law clause. Specifically, this clause stated that the contract's "construction and interpretation" would be governed by Michigan law. Pl.'s Br. at Ex. 2 (Clover Purchase Order's Terms and Conditions).

The Restatement (Second) of Conflict of Laws states that "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement...." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(1) (1971). The comment goes on to explain this rule is really an "incorporation by reference and is not a choice of law." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 cmt. c (1971). In other words, instead of listing every term and condition, the contract may incorporate extrinsic materials that set forth the parties' rights and obligations—e.g., Michigan law.

■ Here, the Accu–Tech–Clover contract clearly states that Michigan law was only to be used for *construction and interpretation.* It did not state, for example, that all of the substantive *rights and duties* afforded by Michigan's laws-such as the MBTFA-would be included. The MBTFA was therefore not incorporated by reference.

**B. Scope of MBTFA**

It is also necessary to determine whether the MBTFA, on its own accord, reaches the situation here.[5] Greenfield argues that Accu–Tech's MBTFA claims related to

5. It is necessary to set forth the distinction between conflict of laws principles and statu-

non-Michigan projects must be rejected. Accu–Tech, on the other hand, contends that MBTFA was intended to apply to this situation because the funds were collected and allegedly misused in Michigan.

Greenfield first points to the presumption that statutes were not intended to apply extraterritorially. *See, e.g., Sexton v. Ryder Truck Rental,* 413 Mich. 406, 320 N.W.2d 843, 854 (1982). Greenfield argues that application of the MBTFA to projects located outside Michigan would contravene this presumption. This conclusion, however, ignores the other connections to the state: Clover and Greenfield are Michigan entities; Accu–Tech delivered most of the materials to Clover's warehouse;[6] the funds were sent to Michigan; etc.

A statute is not necessarily applied extraterritorially where there was one occurrence outside the forum. In *Sexton v. Ryder Truck Rental,* for example, the Michigan Supreme Court held that a Michigan plaintiff could bring a claim under Michigan's vehicle owners' liability statute even when the accident took place outside the state. *Sexton,* 320 N.W.2d at 855–56.

The court, first considering the statute, determined that

> [t]he Legislature is not regulating the tortious conduct of the operators of the vehicles, but rather the relationship between the owner and operator. The purpose of the motor vehicle owners' liability statute is to place the risk of damage or injury upon the person who has the ultimate control of the vehicle.

*Id.* at 855 (quotation and citation omitted). Then, examining the cases before it, the *Sexton* court held that "the owner-operator relationship took place exclusively in Michigan.... [P]laintiffs' employers contracted for and received possession of the leased vehicles from defendants in Michigan for use by their employees." *Id.*[7] Following this line of reasoning, a claim under the MBTFA for non-Michigan projects is not per se extraterritorial; it is necessary to look at the legislators' intent for the statute.

### 1. The Statutory Language and Purpose

For statutory construction, courts begin "by looking at the language of the statute

---

tory interpretation. A conflict of laws inquiry is necessary only if there are two relevant forums with divergent laws. This occurs only if the court determines that both forums' legislators intended their law to apply to the situation. In other words, the court interprets both forums' laws; if both apply, the court moves on to a conflict of laws determination. Here, for the motion presently before the Court, it is only necessary to engage in a statutory analysis to determine the scope of the MBTFA—i.e., to see if the MBTFA applies.

6. Accu–Tech admits that, in some instances, Clover requested that the materials be sent to the project site. Pl.'s Br. at 2 n. 1. Some of these projects were located outside of Michigan. Am. Compl. at Ex.2 (Clover Unpaid Invoices Chart). The only invoices provided to the Court, however, show that delivery was requested at Clover's warehouse. Pl.'s Br. at Ex.1 (Clover's Purchase Orders). Based on the admissible evidence provided to the

Court, it is impossible to determine the amount of materials, if any, sent to non-Michigan project sites. Drawing the inference in favor of Accu–Tech, the Court therefore assumes that materials were sent to Clover's Michigan warehouse.

7. The *Sexton* court framed its analysis using conflicts of laws principles. It did not consider the specific intent of the Michigan legislature; instead, it looked at the general theory behind owners' liability statutes to determine if Michigan had an interest in enforcing its laws—e.g., to protect a Michigan plaintiff or regulate a Michigan defendant. Nonetheless, the opinion is relevant here because, for the Michigan statute to apply, the court must have determined that the Michigan legislators did intend for the statute to be applicable to the situation there. It is possible (and likely) that the court simply combined the conflicts of laws inquiry with the question of the statute's intended scope.

itself to determine if its meaning is plain. Plain meaning is examined by looking at the language and design of the statute as a whole." *United States v. Wagner*, 382 F.3d 598, 607 (6th Cir.2004)(quotation and citation omitted).

The MBTFA, enacted in 1931, was created as a penal statute. *B.F. Farnell Co. v. Monahan*, 377 Mich. 552, 141 N.W.2d 58, 60–61 (1966); *see also DiPonio Constr. Co. v. Rosati Masonry Co.*, 246 Mich.App. 43, 631 N.W.2d 59, 62 (2001)(holding that the MBTFA "does not expressly provide a civil cause of action"). Specifically, section one states that building contract funds paid to a contractor constitute a trust for the benefit of laborers, subcontractors, materialmen, etc. MICH. COMP. LAWS. § 570.151.[8] Section two then states that a contractor who does not first pay laborers, subcontractors, materialmen, etc. with those funds will face criminal penalties. MICH. COMP. LAWS. § 570.152.[9]

Michigan courts have recognized a civil remedy inherent in the MBTFA. *See B.F. Farnell Co.*, 141 N.W.2d at 60–61. The elements are

(1) the defendant is a contractor or subcontractor engaged in the building construction industry, (2) a person paid the contractor or subcontractor for labor or materials provided on a construction project, (3) the defendant retained or used those funds, or any part of those funds, (4) for any purpose other than to first pay laborers, subcontractors, and materialmen, (5) who were engaged by the defendant to perform labor or furnish material for the specific project. *DiPonio Constr. Co.*, 631 N.W.2d at 62. No element in plaintiff's prima facie civil claim explicitly requires an event or party to be affiliated with Michigan. Thus, by the strictest of readings, a violation occurs when a(1) non-Michigan contractor (2) paid by a non-Michigan party for a non-Michigan project (3) retains the funds outside of the state, (4) for a purpose other than to first pay non-Michigan laborers, subcontractors, or materialmen (5) whose relationship with the defendant was forged outside of Michigan to provide labor or materials for the project. Clearly, however, the MBTFA does not (and could not) reach this far. The Michigan legislature must have intended some connection to the state.

Greenfield argues that the legislature's focus was on the project site. As noted above, the MBTFA was created as a crimi-

---

8. Section one, in its entirety, states that

[i]n the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.

MICH. COMP. LAWS. § 570.151.

9. Specifically, pursuant to section two of the act,

[a]ny contractor or subcontractor engaged in the building construction business, who, with intent to defraud, shall retain or use the proceeds or any part therefor, of any payment made to him, for any other purpose than to first pay laborers, subcontractors and materialmen, engaged by him to perform labor or furnish material for the specific improvement, shall be guilty of a felony in appropriating such funds to his own use while any amount for which he may be liable or become liable under the terms of his contract for such labor or material remains unpaid, and may be prosecuted upon the complaint of any persons so defrauded, and, upon conviction, shall be punished by a fine of not less than one hundred dollars or more than five thousand dollars and/or not less than six months nor more than three years imprisonment in a state prison at the discretion of the court.

MICH. COMP. LAWS. § 570.152.

nal statute. Greenfield claims this supports its position because a criminal charge could not be brought here. There are two problems with this reasoning. First, a civil claim under the MBTFA is not dependent upon the existence of a criminal violation. For example, a MBTFA crime requires an intent to defraud. MICH. COMP. LAWS. § 570.152. A MBTFA civil claim does not. *See DiPonio Constr. Co.,* 631 N.W.2d at 62. Second, Greenfield has not shown that a criminal violation did not occur; instead, it assumes that charges could not be brought because certain construction projects were located outside of Michigan. As explained above, there are other connections to Michigan and therefore this assumption cannot be drawn. The criminal nature of the MBTFA does not support Greenfield's claim.[10]

■ Accu–Tech correctly states that the focal point of the act is the mishandling of construction funds. Indeed, this is the behavior the MBTFA specifically makes unlawful. *See* MICH. COMP. LAWS. § 570.152. Accu–Tech therefore argues that this connection to Michigan is sufficient. In this case, however, there are additional contacts with the state. It is therefore unnecessary to create the rule as broad as Accu–Tech presents it.

■ Here, the funds were collected and possibly mishandled in Michigan by a Michigan entity for a construction project; Plaintiff sent materials for the project to Michigan and therefore claims that it was entitled to payments out of the funds. In fact, only two things are not associated with the state. First, Accu–Tech is a Georgia corporation; it was, however, operating in Michigan and is therefore entitled to the protections of the state. Second, the projects were not located in Michigan. The location of the project is not relevant, however, to the conduct regulated by the MBTFA—the focus of the statute is on the collection and misuse of construction funds and not, for instance, on construction site safety. Moreover, even if location was integral, Accu–Tech delivered the project materials to Michigan. The MBTFA is therefore applicable here.

### 2. Background of the MBTFA

■ Generally, courts cannot consider the legislative history of a statute unless the language is ambiguous. *Olden v. LaFarge Corp.,* 383 F.3d 495, 502 (6th Cir. 2004) (citation omitted). Here, even if the MBTFA is ambiguous, the legislative history does not provide any insight. Other courts have been unable to extract anything useful from the history of the act. *See Gen. Ins. Co. of Am. v. Lamar Corp.,* 482 F.2d 856, 860 (6th Cir.1973)(holding that "[t]he legislative history of the [MBTFA] itself is obscure"); *Nat'l Bank of Detroit v. Eames & Brown,* 396 Mich. 611, 242 N.W.2d 412, 415–16 (1976)(quoting the *Lamar Corp.* court's analysis of the MBTFA's legislative history); *In re Certified Question from the E. Dist. of Mich.,* 411 Mich. 727, 311 N.W.2d 731 (1981)(same). Here, the parties here have not offered and the Court has been unable to find any relevant legislative history.

Greenfield nevertheless cites to a general conclusion made by the Sixth Circuit in *Lamar Corp.* based upon the year the act was passed:

> [T]he date of [the MBTFA's] passage, 1931, identifies the act as one of a genre of Depression-era measures intended to

---

**10.** Greenfield also argues that the focal point must be the project's geographical location site because, if not, an extraterritorial applica-

tion of the statute would occur. As discussed above, however, this circular reasoning does not show the legislature's intent.

afford relief to subcontractors and materialmen in the construction industry.

. . . . .

[S]tatutes like the [MBTFA] were enacted to afford a supplement to the Mechanics' Lien Law, providing a more effective remedy for private project suppliers against their principal contractors than they had previously.

*Lamar Corp.*, 482 F.2d at 860 (quotation and footnote omitted). Greenfield also points out that mechanic's liens do not apply to out-of-state projects. *See Stout v. Sawyer*, 37 Mich. 313 (1877). Greenfield therefore concludes that the MBTFA, like mechanic's lien statute, should not apply if the project is outside Michigan.

Greenfield cites to a case that adopted this general approach. *See Mech. Wholesale Corp. v. Fuji Bank*, 42 Cal.App.4th 1647, 50 Cal.Rptr.2d 466 (1996).[11] The court there examined California's stop notice statute and determined that it did not apply to projects outside the state's borders. *Id.* at 467. Stop notices are given to construction lenders by subcontractors when general contractors refuse or are unable to pay. *Id.* There, the plaintiff was a California subcontractor who provided labor, materials and equipment to a general contractor for a commercial project in Hawaii. *Id.* at 468. The defendant lent money to the general contractor relating to the project and held the funds in its California bank. *Id.* After it was not paid,

the plaintiff served a stop notice on the defendant. *Id.* The court first examined the statutory scheme and determined that the legislature intended the stop notice provision to be intertwined and consistent with the mechanic's lien provision (which required that the project be located in the state). *Id.* at 471–72. The court then stated policy reasons why a stop notice should not be allowed: the intended statutory scope would be expanded; California had no interest when only the lender was located in the state; and, the defendants and general contractor would not have expected California law to apply. *Id.* at 473–74. Thus, the court ruled that the stop notice was not permissible. *Id.*

The holding in *Mech. Wholesale Corp.* is not helpful to interpreting the MBTFA. First, unlike the California statute, the MBTFA and Michigan's mechanic's lien statute are not intertwined. There is no evidence that the legislature intended the statutes to have the same scope. Second, the policy reasons from *Mech. Wholesale Corp.* do not apply. Michigan does have an interest in enforcing a regulatory statute where the Defendants and Clover are Michigan entities; there is also an interest in protecting business that operate in the state such as Accu–Tech. In addition, Clover and Defendants should expect Michigan law to apply when most of the contacts are associated with the state.[12]

**11.** Greenfield also claims that *Nuclear Corp. of Am. v. Hale*, 355 F.Supp. 193 (N.D.Tex. 1973), used this analysis. This conclusion is incorrect. In *Hale*, there were projects in Oklahoma and Texas. *Id.* at 195–96. The defendants argued that Texas law applied to both projects because the agreements for supplying materials were made and performed in Texas. *Id.* at 196. The court rejected this contention, however, because the law to be applied was a *materialman's lien* which, it held, was a creature of the law of the state where the real property was located. *Id.* at 196–97. In fact, the Texas statute explicitly

dealt with "the improvement of specific real property in [that] state...." *Id.* at 196 (quoting Tex.Rev.Civ. Stat. Ann. art. 5472e § 1 (1967)). Therefore, *Hale* is not analogous and lends no weight to Greenfield's position.

**12.** The first policy reason mentioned in *Mech. Wholesale Corp.*—that the statute's scope would be expanded beyond its original purpose—is not a policy consideration here; it is the underlying issue before the Court. Thus, it is not helpful to argue that applying the MBTFA here would go beyond the original intent of the legislators.

Greenfield is unable to support its argument that the mechanic's lien statute and the MBTFA must have the same scope. It is not supported by *Mech. Wholesale Corp.*—a case that examined a different statutory scheme with different policy considerations. There is also no evidence that the Michigan legislature intended this result. Also, although the court in *Lamar Corp.* did state that the MBTFA supplemented mechanic's liens, it did not say they were congruent statutes. Pursuant to the plain language and design of the MBTFA, a claim under the statute is permitted here.

## IV. Conclusion

For the reasons state above, Defendant's motion in limine is **DENIED WITHOUT PREJUDICE** and its motion for summary judgment is **DENIED**.