Affirmed in Part, and Reversed in Part, and Remanded, and Majority and
Dissenting Opinions filed July 3, 2008








 

Affirmed
in Part, and Reversed in Part, and Remanded, and Majority and Dissenting
Opinions filed July 3, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00270-CV

____________

 

DAN KELLY AND LAURA HOFSTATTER,
Appellants

 

V.

 

GENERAL INTERIOR CONSTRUCTION,
INC., Appellee

 



 

On Appeal from the 125th District
Court

Harris County, Texas

Trial Court Cause No. 2005-46388

 



 

M A J O R I T Y   O P I N I O N

In this
accelerated appeal, appellants, Dan Kelly and Laura Hofstatter, challenge the
denial of their special appearance, asserting that the trial court did not have
personal jurisdiction over them with respect to appellee=s, General Interior Construction,
Inc. (AGeneral@), breach of contract and fraud
claims and alleged violations under chapter 162 of the Texas Property Code.  We
affirm the trial court=s order denying the special appearance as to General=s chapter 162 and fraud claims, and
reverse as to General=s breach of contract claim.








BACKGROUND

Appellants
Dan Kelly and Laura Hofstatter (collectively the AOfficers@) are the sole shareholders and
officers of DIVA Consulting, Inc. (ADIVA@), an Arizona-based company regularly
acting as a general contractor on construction projects.    Hofstatter is the
President of DIVA, while Kelly is the Vice-President.  Hofstatter and Kelly are
both Arizona residents. 

In 2004,
DIVA entered into a construction contract for improvements to be performed on a
hotel located in Texas (the AHilton project@).  DIVA then entered into numerous
subcontract agreements with various Texas contractors, including General, a
Texas company, to provide labor and materials on the Hilton project.  After executing
these agreements, General and the other Texas subcontractors began work on the
project.  During construction, Kelly made site trips to Texas to oversee the
project.  DIVA sent change orders to and received invoices from General and
other Texas subcontractors for materials and work performed.  The Officers
frequently corresponded with General via email, facsimile, and telephone. 
Throughout the duration of the project, DIVA received funds from the property
owner, Meristar Hospitality Corporation (AMeristar@), to pay for expenses related to the
Hilton project.  Initially, the Officers, on behalf of DIVA, sent payments to
General; payments stopped when DIVA disputed the amounts owed to General and
alleged that General=s performance was substandard.  

Meristar
initiated litigation against both DIVA and General for various contract and
tort claims.  General counterclaimed against Meristar and filed a cross-claim
against DIVA and third-party petition against the Officers for breach of
contract, fraud, and violations under chapter 162 of the Texas Property Code
(the ATexas Trust Fund Act@). The Officers filed a joint special
appearance contesting the trial court=s personal jurisdiction over them as
to General=s third-party claims.  The trial court denied the special appearance, and
this appeal ensued.  








The
Officers challenge the denial of their special appearance on three grounds. 
First, the Officers argue that they are not subject to personal jurisdiction as
to General=s breach of contract claim because they were not parties to the contract
and were acting in their corporate capacity.  In their second issue, the
Officers contend that no jurisdiction exists as to General=s chapter 162 claim because they are
nonresidents of Texas and were acting in their corporate capacity.  In their
last issue, the Officers argue that no jurisdiction exists as to General=s fraud claim because there is no
evidence that the Officers engaged in fraudulent conduct.  

STANDARD
OF REVIEW

Whether
a trial court has personal jurisdiction over a defendant is a question of law
we review de novo.  Moki Mac River Expeditions v. Drugg, 221 S.W.3d 569,
574 (Tex. 2007).  When the trial court does not issue findings of fact and
conclusions of law with its special appearance ruling, as in this case, all
facts necessary to support the judgment and supported by the evidence are
implied.  BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 795
(Tex. 2002).  








The
plaintiff bears the initial burden of pleading sufficient allegations to invoke
jurisdiction under the Texas long-arm statute.  Am. Type Culture Collection,
Inc. v. Coleman, 83 S.W.3d 801, 807 (Tex. 2002).  The nonresident defendant
then assumes the burden of negating all bases of jurisdiction in those
allegations.  BMC Software, 83 S.W.3d at 793.  In considering the denial
of a special appearance, we determine only the issue of jurisdiction, not
liability.  Barnhill v. Automated Shrimp Corp., 222 S.W.3d 756, 762
(Tex. App.CWaco 2007, no pet.).  A Texas court may exercise personal jurisdiction
over a nonresident defendant if (1) the defendant has minimum contacts with
Texas, and (2) the exercise of jurisdiction comports with traditional notions
of fair play and substantial justice.  BMC Software, 83 S.W.3d at 795. 
Minimum contacts are sufficient for personal jurisdiction when the nonresident
defendant purposefully avails himself of the privilege of conducting activities
within the forum State, thus invoking the benefits and protections of its laws. 
Moki Mac, 221 S.W.3d at 575.  There must be either minimum contacts
sufficient to confer specific jurisdiction or continuous and systematic
contacts sufficient to confer general jurisdiction. Coleman, 83 S.W.3d
at 806-07.

When
specific jurisdiction is asserted, as in this case, the following requirements
must be met: (1) the defendant=s contacts must be purposeful; and (2) the cause of action
must arise from or relate to those contacts.  Id. at 806.  In analyzing
specific jurisdiction, we must focus on the relationship among the defendant,
Texas, and the cause of action.  See Guardian Royal Exch. Assur., Ltd. v.
English China Clays, P.L.C., 815 S.W.2d 223, 228 (Tex. 1991); Barnhill,
222 S.W.3d at 762.   Furthermore, foreseeability is an important consideration,
although not determinative, in deciding whether the nonresident defendant has
purposefully established Aminimum contacts@ with the forum.  BMC Software,
83 S.W.3d at 795; Huynh v. Nguyen, 180 S.W.3d 608, 616 (Tex. App.CHouston [14th Dist.] 2005, no pet.). 

MINIMUM
CONTACTS ANALYSIS

Breach
of Contract Claim








In the
Officers= first issue, they contend that they
are not subject to personal jurisdiction as to General=s breach of contract claim because
they were not parties to the contract and were acting in their corporate capacity. 
We agree.  A corporate officer who signs a contract on behalf of his
corporation is not a party to the contract, but acting in his corporate
capacity.  Such act does not constitute a contact for purposes of personal
jurisdiction.  Wolf v. Summers-Wood, L.P., 214 S.W.3d 783, 792 (Tex.
App.CDallas 2007, no pet.) (concluding
that no specific jurisdiction existed where officer contracted in corporate
capacity); Cerbone v. Farb, 225 S.W.3d 764, 771-72 (Tex. App.CHouston [14th Dist.] 2007, no pet.)
(holding that the appellant did not make a purposeful contact with forum
because he was not a party to the settlement agreement).  Because Hofstatter
signed the contract in her corporate capacity, her act was not a contact or
purposeful act to impose personal jurisdiction.  See Wolf, 214 S.W.3d at
792; Cerbone, 225 S.W.3d at 771-72.[1] 
The trial court does not have jurisdiction over her with respect to General=s breach of contract claim.[2]  
Likewise, Kelly is not subject to personal jurisdiction on the basis of the
corporate contract.  See Wolf, 214 S.W.3d at 792; Cerbone, 225
S.W.3d at 771-72.  Accordingly, the trial court lacked personal jurisdiction
over the Officers with respect to the breach of contract claim alleged by
General.  We sustain appellants= first issue.[3]








Chapter
162 Claim

In their
second issue, the Officers challenge personal jurisdiction as to General=s chapter 162 claim under the Texas
Trust Fund Act.  In assessing personal jurisdiction, we must focus on the
relationship among the Officers, Texas, and the chapter 162 cause of action. 
See Guardian Royal, 815 S.W.2d at 228; Barnhill, 222 S.W.3d at 762. 
The Trust Fund Act imposes fiduciary responsibilities on contractors to ensure
that Texas subcontractors, mechanics, and materialmen are paid for work
completed.  Taylor Pipeline Constr., Inc. v. Directional Road Boring, Inc.,
438 F.Supp.2d 696, 714-15 (E.D. Tex. 2006).  Under chapter 162, construction
payments are trust funds if the payments were made to a contractor or to an
officer under a construction contract for improvement of specific real estate
in Texas.  Tex. Prop. Code Ann. ' 162.001.  The contractor or officer
who receives the trust funds is a trustee of the funds.  Id. ' 162.002.  The artisan, laborer,
mechanic, contractor, subcontractor, or materialman who labors or furnishes
labor or material for the construction or repair of an improvement on specific
real property located in Texas is the beneficiary of any trust funds paid or
received in connection with the improvement.  Id. ' 162.003.  A trustee who
intentionally or knowingly or with the intent to defraud directly or indirectly
retains, uses, disburses, or otherwise diverts the funds has misapplied the
trust funds.  Id. ' 162.031.  Thus, a trustee who misapplies these trust funds
is subject to personal civil liability if (1) the party breaches the duty
imposed by chapter 162 with the requisite scienter, and (2) the claimants are
within the class of people chapter 162 was designed to protect and have
asserted the type of injury chapter 162 was intended to prohibit.  C &
G, Inc. v. Jones, 165 S.W.3d 450, 453 (Tex. App.CDallas 2005, pet. denied).  Any
officer or director who has control or direction over the funds is also a
trustee of the funds and is personally liable.  Id. at 453-54. 








Under
Texas law, the construction payments from Meristar to DIVA were trust funds
held for the benefit of General, a subcontractor and materialman on the Hilton
project.  Any officer or director who had control or direction over such funds
was also a trustee of the funds.  It is undisputed that the Officers had
exclusive control and direction over these funds.  General pleads that the
Officers were the sole owners and shareholders of DIVA and that they controlled
and directed all funds received by Meristar for the Hilton project.  Thus, they
are charged by the Texas Trust Fund Act with the fiduciary duties and
responsibilities of a Texas trustee.  The dissent reasons that no personal
jurisdiction exists because the Officers did not act in their individual
capacities, but on behalf of DIVA.  This point is irrelevant in the instant
case because the cause of action made the basis of personal jurisdiction
imputes individual liability on the Officers for misappropriating Texas trust
funds.  By controlling the trust funds, the Texas Trust Fund Act imposes a
fiduciary duty that extends beyond DIVA and reaches the Officers individually. 
See Nuclear Corp. of Am. v. Hale, 355 F.Supp. 193, 197 (N.D. Tex. 1973)
(stating that individual liability depends only on whether officers controlled
or directed funds).[4]  Looking at
the chapter 162 claim, we must focus only on whether General has pleaded that
the Officers, regardless on behalf of DIVA or in their individual capacities,
controlled and directed funds received for the Hilton project.  Clearly,
General has done so.[5]    








General
also relies on Herbert v. Greater Gulf Coast Enterprises, Inc. in
support of its jurisdiction argument.  915 S.W.2d 866 (Tex. App.CHouston [1st Dist.] 1995, no writ). 
In Herbert, our sister court faced a similar issue in which a Texas
company sought to sue the president of a foreign company in his individual
capacity.  Id. at 869.  The Texas company alleged that chapter 162
imposed individual liability upon the defendant because he misdirected trust
funds that were received by the foreign company under a construction contract. 
Id. at 870.  The First Court concluded that these allegations alone were
sufficient to confer personal jurisdiction.  Id.  Accepting as true
General=s allegations that the Officers
misappropriated Texas trust funds, we hold that such allegations are sufficient
to establish minimum contacts with respect to its chapter 162 claim.  See id.[6]


Fraud
Claim

In their
third issue, the Officers argue that there is no personal jurisdiction as to
General=s fraud claim, which alleges that the
Officers continued to allow General to work on the Hilton project under the false
pretense that General would be paid, knowing all along that the Officers had no
intentions of paying General.  The Officers argue that the trial court did not
have personal jurisdiction on the fraud claim because there is no evidence that
any false statements were made to General.  This argument relates to the merits
of whether the Officers actually committed the alleged fraud.  Ultimate tort
liability is not a jurisdictional fact; the merits are not at issue in a
special appearance.  See Cerbone, 225 S.W.3d at 770; Glattly v. CMS
Viron Corp., 177 S.W.3d 438, 449 (Tex. App.CHouston [1st Dist.] 2005, no pet.).








The
Officers may be individually liable for the alleged false statements because a
corporate officer can be held individually liable for fraudulent statements or
knowing misrepresentations even when they are made in the capacity of a
corporate representative.  See Glattly, 177 S.W.3d at 448.  It is not
necessary that the corporate veil be pierced in order to impose liability, as
long as it is shown that the corporate officer knowingly participated in the
wrongdoing.  Id. (quoting Wright v. Sage Engineering, Inc., 137
S.W.3d 238, 250 (Tex. App.CHouston [1st Dist.] 2004, pet. denied)).  The Officers= alleged fraud sufficiently Arelates to@ conduct purposefully directed toward
Texas. We hold that General has made allegations of sufficient minimum contacts
with respect to its fraud claim. 

FAIR PLAY
AND SUBSTANTIAL JUSTICE








Once it
has been decided that a defendant purposefully established minimum contacts
within the forum State, these contacts may be considered, in light of other
factors, to determine whether the assertion of personal jurisdiction would
comport with fair play and substantial justice.  Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).  The
other relevant factors are: (1) the burden on the nonresident defendant; (2)
the forum state=s interest in adjudicating the dispute; (3) the plaintiff=s interest in obtaining convenient
and effective relief; (4) the interstate judicial system=s interest in obtaining the most
efficient resolution of controversies; and (5) the shared interest of the
several states in furthering substantive social policies.  World-Wide
Volkswagen Corp. v. Woodson, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d
490 (1980).   After reviewing these factors and the evidence, it is clear that
jurisdiction would not offend traditional notions of fair play and substantial
justice.  The Officers have not made a showing of undue burden.  The litigation
below involves numerous parties, counterclaims, and crossclaims.  Because the
Officers, on behalf of DIVA, are defending against certain claims in this Texas
lawsuit, there will be no additional burden on them to defend against General=s chapter 162 and fraud claims.  It would
be a waste of judicial resources to litigate all the claims, including the
counterclaims and cross claims, in Texas, and litigate two related claims in
another forum. Texas also has a legitimate interest in asserting jurisdiction:
(1) the litigation involves misappropriated trust funds and fraudulent acts
subject to Texas law; (2) General is a Texas resident; and (3) the litigation
involves work performed on Texas real estate.  See D.H. Blair Inv. Banking
Corp. v. Reardon, 97 S.W.3d 269, 278 (Tex. App.CHouston [14th Dist.] 2002, pet. dism=d w.o.j.).  

General
also has a heightened interest in obtaining relief in this case. 
Subcontractors and materialmen are at the bottom of the construction chain,
leaving chapter 162, in most cases, their only remedy to recover for work
performed on construction projects.  In re HLW Enterprises of Tex., Inc.,
157 B.R. 592, 597 (Bankr. W.D. Tex. 1993).   Because chapter 162 is a remedial
statute, we must give it a broad construction to effectuate its protective
purposes.  Jones, 165 S.W.3d at 454.  The dissent ignores the statute=s purpose.  The Texas Supreme Court
has indicated that the Texas Trust Fund Act should be construed liberally in
favor of laborers and materialmen.  RepublicBank Dallas, N.A. v. Interkal,
Inc., 691 S.W.2d 605, 607 (Tex. 1985).  This provision was specifically
enacted to serve as a special protection for subcontractors and materialmen in
situations as the instant one, where contractors refuse to pay the
subcontractor or materialman for labor and materials.  Taylor Pipeline Constr.,
438 F.Supp.2d at 714-15; Herbert, 915 S.W.2d at 870-871.  Additionally,
states and the intrastate judicial system both hold similar interests in
resolving such conflicts efficiently in order to protect residents from
economic loss resulting from torts.  See Guardian Royal,
815 S.W.2d at 228.  








The
basic equities clearly weigh in favor of in personam jurisdiction.  We hold
that jurisdiction over the Officers is not offensive to the ideals of fair play
and substantial justice with respect to the chapter 162 and fraud claims.  We
further hold that the trial court did not err by denying the Officers= special appearance as to the chapter
162 and fraud claims.  We overrule appellants= second and third issues.  

We affirm the trial court=s order denying the Officers= special appearance with respect to General=s chapter 162 and fraud claims, and reverse the trial
court=s order denying the Officers= special appearance as to General=s breach of contract claim.  We remand to the trial
court with instructions to dismiss General=s
breach of contract claim against the Officers for want of personal
jurisdiction.

 

 

 

 

/s/        Adele Hedges

Chief Justice

 

 

 

 

Judgment rendered and
Majority and Dissenting Opinions July 3, 2008.

Panel consists of Chief Justice
Hedges and Justices Anderson and Frost (Frost, J. dissenting).

 

 









[1]  The dissent alleges that our analysis conflicts with
Cerbone.  Cerbone, however, supports our reasoning and conclusion
that Hofstatter did not make a purposeful contact by contracting in her
corporate capacity.  See Cerbone, 225 S.W.3d at 771 (no purposeful
availment where individual signed agreement in corporate capacity).  We also
note that our decision does not reach the merits of General=s claim.  There is a difference between the issue of
liability and imputing one entity=s
contacts to another for jurisdictional purposes. PHC-Minden, L.P. v.
Kimberly-Clark Corp., 235 S.W.3d 163, 174 (Tex. 2007).  Our decision today
addresses the jurisdictional issue as to whether DIVA=s act can be imputed onto Hofstatter, who was acting
in her corporate capacity.  See id.





[2]  The dissent contends that our analysis of and
reliance on Wolf is in conflict with two Texas Supreme Court cases and
two Fourteenth Court of Appeals cases.  See PHC-Minden, 235 S.W.3d 163; Michiana
Easy Livin= Country, Inc. v. Holten, 168 S.W.3d 777 (Tex. 2005); Weldon-Francke v.
Fisher, 237 S.W.3d 789 (Tex. App.CHouston
[14th Dist.] 2007, no pet.); Cerbone, 225 S.W.3d 764.  PHC-Minden
involved a tort claim and an assertion of only general jurisdiction.  Our case
involves specific jurisdiction on a breach of contract claim.  Additionally,
the Court in PHC-Minden reasoned that deciding whether a business
contact can be imputed on a corporate official is a jurisdictional issue, not
one of liability.  235 S.W.3d at 174.  Our conclusion and Wolf follow
this reasoning.  Because Hofstatter was acting in her corporate capacity, DIVA=s act cannot be imputed to Hofstatter, depriving the
trial court of jurisdiction.  See id.  PHC-Minden supports Wolf
and our conclusion on personal jurisdiction. Our decision is not also in
conflict with Michiana.  Michiana reasons, as do we, that
jurisdiction turns on purposeful availment and contacts.  168 S.W.3d at
791-92.  Fisher is a tort case reasoning that liability is irrelevant in
a jurisdictional analysis.  237 S.W.3d at 797-98.  Our decision today does not
dispute this contention.  Moreover, our opinion in Cerbone supports our
conclusion.  See supra note 1.





[3]  The dissent believes that General failed to allege a
breach of contract claim against the Officers.  General=s answer is divided into four parts: a general denial,
a counterclaim against Meristar, a cross-claim against DIVA, and a third-party
claim against the Officers.  The cross-claim states a breach of contract claim
against DIVA, and the third-party petition states a breach of contract claim
against the Officers.  General=s third-party
petition alleges that the Officers, who exclusively owned and operated DIVA,
are liable for breach of contract.  See Tex. Dept. of Transp. v. Ramirez,
74 S.W.3d 864, 867 (Tex. 2002) (holding that in considering jurisdictional
motions, the reviewing court construes the pleadings in the plaintiff=s favor).  Accordingly, a breach of contract claim was
alleged against the Officers in the third-party petition. 





[4]  The dissent relies on Commonwealth Gen. Corp. v.
York to support its contention that we consider only the Officers= purposeful contacts with Texas and not the contacts
of DIVA in assessing personal jurisdiction.  177 S.W.3d 923 (Tex. 2005). 
Unlike York, the instant case involves liability under chapter 162,
which automatically imputes individual liability upon an officer or shareholder
who controls and directs the trust funds, regardless of the capacity in which
the individual is acting while handling the funds.  Chapter 162 essentially
pierces the corporate veil for subcontractors.  Because the statute explicitly
creates a fiduciary relationship and imposes individual liability regardless of
one=s acting capacity, a piercing of the corporate veil
analysis is inappropriate for General=s
chapter 162 claims.  See Jones, 165 S.W.3d at 453-54 (a party who
misapplies trust funds under chapter 162 is subject to civil liability); Perry
& Perry Builders v. Galvan, No. 03-02-00091-CV, 2003 WL 21705248, at
*4-5 (Tex. App.CAustin July 24, 2003, no pet.) (mem. op.) (jury charge
and findings were sufficient in chapter 162 suit instructing the jury that individual
liability exists where trustee diverts funds from beneficiary); Lively v.
Carpet Servs., Inc., 904 S.W.2d 868, 873 (Tex. App.CHouston [1st Dist.] 1995, writ denied) (any officer or
director who has control or direction over the funds is also a trustee, and is
therefore personally liable).





[5]  The dissent also contends that the Officers had no
substantial connection with Texas.  The record reveals that performance under
the construction contract was to be performed exclusively in Texas.  The
Officers sent and directed payments to General in Texas.  Kelly made site
visits to the Texas work site. The Officers received numerous invoices from
Texas regarding the Hilton project.  See Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (when a
party reaches out beyond one state and creates a continuing relationship and
obligation with a citizen of another state, he is subject to regulation and
sanctions in the other state for the consequences of his activities). 





[6]  The dissent rejects Herbert on erroneous
grounds.  Herbert is directly on point.  The dissent cites to no
authority overruling or disagreeing with Herbert and provides no
authority involving a chapter 162 claim that supports is its contentions.